Luther BURKE, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. 3969.

Supreme Court of Alaska.

Oct. 24, 1980.

Walter Share, Sue Ellen Tatter, Asst. Public Defenders, and Brian Shortell, Public Defender, Anchorage, for appellant.

Charles W. Cohen, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.*

## OPINION

RABINOWITZ, Chief Justice.

Luther Burke appeals his statutory rape conviction on seven separate grounds. These are alleged due process violations as a result of pre-indictment delay, an alleged error in allowance of evidence of prior sexual misconduct, a denial of a continuance, a denial of a motion for acquittal on lack of corroboration, failure to give a cautionary instruction on the victim's testimony, and error in giving instructions on the absence of a need for corroboration and inconsistent testimony. We have considered each of these alleged errors in turn and find no reversible error. Therefore, Burke's conviction is affirmed.

Cecilia Burke came home early from work on the morning of October 1, 1976, and found her daughter, M.B., then 15, in bed with her daughter's stepfather (Cecilia's former husband), Luther Burke. Although divorced, Cecilia and Burke had

---

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

been living together on and off since June. Burke worked as a cook on the pipeline. He was gone for periods of up to two months at a time, coming into Anchorage for at most periods of two weeks. On this particular morning, Cecilia expected him to be there when she got home.

Upon entering her house, Cecilia realized that Luther must be in her daughter's room when she heard his snoring coming from that room, although his clothes were on a love seat in the living room. Entering the bedroom, she switched on the lights and found Burke in bed with M.B. She pulled back the sheets and found him totally naked. M.B.'s nightgown was pushed up to her waist. She awakened Burke, asked him what he was doing, cursed him, and tried to strike him.

Cecilia asked M.B. how long this had been going on, and she said, "since we [lived] in Fairview," a prior residence. Cecilia yelled at her, hit her, and told her to get her clothes on and that she was taking her to the doctor. M.B., distraught, then ran away from home and could not be located for a period of several weeks.

At trial, M.B. testified that Burke had sexual intercourse with her that night. She testified that it was not the first time and that Burke had had intercourse with her four or five times. According to M.B., he had repeatedly threatened her, and she had submitted out of fear of what he would do. The last time before the October 1st incident that Burke had had intercourse with her was two days earlier. M.B. testified that she had cried loudly. M.B.'s half sister, A.B., testified that she had heard her father tell M.B. to take her clothes off and heard M.B. crying on that night.

Burke did not testify but his version of the events came from a statement he made to the police, and a stipulation entered in evidence. Burke stated he had never had intercourse with M.B. or any of his children. As to the night of October 1st, he went out that evening with a woman he knew named Powell and had intercourse with her. He had been drinking at the Montana Club and became very intoxicated during the course of the night. He went to Cecilia's house and removed his clothes to sleep on the couch. Later, he went to the bathroom because he became sick. He said he must have accidently gone into M.B.'s room and fallen asleep.

## I. PRE-INDICTMENT DELAY

■ Burke asserts as his first claim that he was deprived of due process of law through pre-indictment delay.[1] The alleged rape occurred on October 1, 1976. The original indictment was brought on February 25, 1977.[2] Thus, Burke complains of a delay of approximately five months.

■ In *Coffey v. State*, 585 P.2d 514, 519 (Alaska 1978), *on rehearing*, 596 P.2d 10 (Alaska 1979), we stated that, in resolving questions of pre-indictment delay:

> Two factors are to be considered under both federal and state law: (1) the reasonableness of the delay and (2) the resulting harm to the accused.

Although burden of proof is on the defendant to show the absence of a valid reason for the delay and the fact of prejudice, the state has the burden, once the issue is raised, to come forward with reasons for the delay. Once reasons are advanced, the

1. The right to be free of prejudicial pre-indictment delay is based on the due process clauses in the state and federal constitutions (United States Constitution amendment XIV; Alaska Constitution art. I, § 7) and not on the right to a speedy trial which does not attach until the commencement of formal proceedings. *See United States v. Lovasco*, 431 U.S. 783, 788–89, 97 S.Ct. 2044, 2047–49, 52 L.Ed.2d 752, 758 (1977); *Coffey v. State*, 585 P.2d 514, 519 n.12 (Alaska 1978), *on rehearing*, 596 P.2d 10 (Alaska 1979).

2. This initial indictment was dismissed because it inadvertently cited the forcible rape statute. A second indictment was returned on May 19, 1977; however, that indictment was also dismissed because the state failed to introduce exculpatory evidence to the grand jury. A third indictment was returned on August 4, 1977, and sustained against Burke's motion to dismiss for pre-indictment delay.

defendant must show that they do not justify the delay.[3]

In the case at bar, the reasons advanced in explanation of the delay by the state were as follows:

> An initial two week delay was caused by the fact that [the victim] had run away from home. An additional month was used locating Burke at a remote work camp on the North Slope and taking his statement.... The next portion of the delay was taken up by an attempt to locate Burke's ... witness. This search was made in January, 1977.... [A] substantial portion of the delay in this case was due to the State's good faith effort to conduct an impartial investigation and locate defense witnesses.[4]

These reasons were developed during a pretrial hearing on Burke's motion for dismissal due to pre-indictment delay. State Trooper James Hildreth was the chief investigatory officer on the case. He first interviewed M.B. after she had turned herself in, having been away from home for two weeks. Hildreth also interviewed Mrs. Burke and the other daughters. Then, Hildreth was temporarily transferred to pipeline duty for thirty days and from November 15 to December 15th, the case lay dormant. Hildreth first presented the case to the district attorney's office prior to his reassignment, and the district attorney who reviewed the case requested that Burke be interviewed. After Hildreth's return, he attempted to locate Burke who was a cook at a camp on the pipeline. An interview was finally taken by another trooper just prior to Christmas. After receiving Burke's statement, Hildreth again contacted the district attorney's office. The district attorney this time requested that Hildreth attempt to locate Ms. Powell. Between Christmas and his final presentation of the case to the district attorney's office shortly before the February 25 grand jury indictment, Hildreth did try to recontact Burke and to uncover more information about the woman Burke had seen earlier on the evening in question.

The state explained the period of delay by stating that the troopers were actively investigating the case from October 1 through the end of the year, and that, after that period, the active investigation was at a standstill. The period from January 1 until the indictment on February 25 "was the time required by the district attorney's office to evaluate the case, get ahold of the witnesses and actually do the grand jury [proceedings]."

The alleged prejudice from the delay was that Burke was unable to substantiate his version of events prior to his arrival at his former wife's home. In particular, Burke alleges that the delay resulted in the loss of one witness, Helen Powell, and the loss of memory in another, the hotel clerk at the Arctic Inn. Burke asserted that his witnesses would substantiate his version of the events of October 1: that he had gone out drinking with Ms. Powell, then had sexual intercourse with her in the Arctic Inn, and that when he left the hotel to go to Cecilia Burke's home, he was in a state of extreme intoxication. The relevancy of such testimony was asserted to be that, given his state of extreme intoxication and the fact that he had just had sexual intercourse with another woman, it is unlikely that he would have forced his stepdaughter to have inter-

---

3. *Coffey v. State*, 585 P.2d at 519–20 & n.19.

4. The state also argues that the initial contact by the police in taking Burke's statement in early December put Burke on notice concerning the accusation against him and the date it allegedly occurred. The state seems to suggest that any pre-indictment delay is mitigated by a police visit that might suggest to the interviewee that charges will be brought against him, and thus lessen the prejudice by allowing one to begin to prepare to defend himself at the point of police contact. Burke, in response, stated that the statement taken was also relevant to the child custody proceeding which was also pending. More importantly, Burke argues that a person should not have to go to the expense of preparing for trial and gathering evidence before being given the protection of a grand jury. The weight to be given such notice would depend upon the nature of the case and the defense. If substantial expense or effort were required to prepare the defense, such notice would have little weight as to the matter of prejudice.

course with him; further, the testimony would corroborate Burke's statement that he accidentally fell asleep in M.B.'s bed due to his degree of intoxication.

In support of the claim of prejudice, Burke filed affidavits by Susan Connolly, who also testified at the initial hearing on the motion to dismiss. Connolly, an experienced investigator, was first brought in by defense counsel to work on this case on March 25, 1977. Connolly stated that she made continuing efforts to contact the woman who Mr. Burke stated he was with that evening, identified as "one Helen Powell, who in the fall of 1976 was living at 1227 East 11 Avenue in an apartment complex," and "that [Ms. Powell] was in the Anchorage area and capable of being reached ... up until February, 1977, when according to my information she departed Alaska and moved to Texas to a city which I have been unable to ascertain." Ms. Powell was apparently a transient person, paying rent by the day rather than the month. Burke had been introduced to Powell earlier in the summer on a previous leave from the pipeline and had a very superficial relationship with her. Ms. Connolly had also contacted the owner of the Arctic Inn Motel regarding Burke's stay during the evening of October 1. The hotel records reflect that Burke was registered for approximately a week to ten days around October 1, but that the owner did not remember Burke's activity on the night in question.

At trial, the state attempted to mitigate any prejudice from the pre-indictment delay by entering into the following stipulation which was read to the jury:

(1) Earlier on the evening of September 30-October 1, 1976, defendant, Mr. Burke, was with a woman.

(2) Both parties had been drinking that evening at the Arctic Inn and the Montana Club.

(3) The defendant, Luther Burke, had sexual intercourse with said woman in a room at the Arctic Inn that night, prior to going to 1036 West 74th, the residence of Mrs. Burke and her three children, [M.B.] [A.B.] and [S.B.].

(4) That if said woman were called to testify on behalf of Mr. Burke, she would so testify; and in fact she would be telling the truth.

Burke argues that the stipulation was wanting in its failure to: (1) indicate the degree of his intoxication, (2) the time of his intercourse with Powell, and (3) the time of his departure for his former wife's home.

As to the state's reasons for the delay, the five-month period appears to have been largely for investigative purposes and partially for the district attorney's review of the file. A pre-indictment delay solely for investigatory purposes was considered by the United States Supreme Court in *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752, *reh. denied,* 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977). The Supreme Court upheld an indictment for possession of stolen firearms and dealing in firearms without a license, returned after an eighteen-month delay, finding that the delay in question was for the purpose of a good faith investigation. The court, in a lengthy discussion, set forth numerous reasons why the prosecution should not be required to file an indictment immediately upon a determination that probable cause existed sufficient to seek a grand jury indictment.

[R]equiring the Government to make charging decisions immediately upon assembling evidence sufficient to establish guilt would preclude the Government from giving full consideration to the desirability of not prosecuting in particular cases. The decision to file criminal charges, with the awesome consequences it entails, requires consideration of a wide range of factors in addition to the strength of the Government's case, in order to determine whether prosecution would be in the public interest. Prosecutors often need more information than proof of a suspect's guilt, therefore, before deciding whether to seek an indictment. Again the instant case provides a useful illustration. Although proof of the identity of the mail thieves was not

necessary to convict respondent of the possessory crimes with which he was charged, it might have been crucial in assessing respondent's culpability, as distinguished from his legal guilt. If, for example, further investigation were to show that respondent had no role in or advance knowledge of the theft and simply agreed, out of paternal loyalty, to help his son dispose of the guns once respondent discovered his son had stolen them, the United States Attorney might have decided not to prosecute, especially since at the time of the crime respondent was over 60 years old and had no prior criminal record. Requiring prosecution once the evidence of guilt is clear, however, could prevent a prosecutor from awaiting the information necessary for such a decision.

*Id.* at 794–95, 97 S.Ct. at 2051, 52 L.Ed.2d at 761–62 (footnotes omitted). This court reached similar conclusions in *Yarbor v. State*, 546 P.2d 564, 566 (Alaska 1976):

[Defendants] have much to lose by a rule which would prompt district attorneys to initiate prosecutions without waiting for more than the minimum evidence to establish probable cause—a quantum of evidence which falls far short of the amount necessary to support a criminal conviction. Exculpatory evidence often follows closely in the footsteps of incriminating evidence. Moreover, it is foreseeable that prosecuting attorneys, in their haste to file charges upon determining that probable cause exists, would act on cases which, given time to carefully reflect on the merits, would not be brought. When the potential harm which results from reasonable delay is weighed against the anxiety and concern accompanying public accusation, it is clearly in the citizens' best interests to allow district attorneys some latitude in filing criminal cases. Each case would have to be reviewed constantly to determine whether a court might subsequently find that 'probable cause' had existed at a given instant. To guess wrong might be fatal to the case: an arrest without probable cause, and a further investigation when probable cause exists, could be equally disastrous. We prefer to allow the investigating and prosecuting authorities more time in order to ensure proper arrests, rather than stampeding them into hastily accusing the wrong person, or filing a case on an inadequate factual basis.

██ In this case, a good portion of the delay was caused by trying to get information from the defendant and to corroborate his version of the events. A delay by the prosecution to gather potentially exculpatory evidence is clearly not an unreasonable delay. The period of time through the end of 1976 is amply justified for purposes of investigation given the difficulty of locating witnesses. The one-month delay while the chief investigating officer was on temporary leave and the case was inactive we deem excusable in this case. However, we caution that continued or long term inactivity or a pattern of lack of prompt investigation of cases might warrant our reconsideration of such periods.

Concerning the period of January and February 1977, although there is some evidence of justification for investigatory purposes, there is the additional justification that the prosecutor had to carefully weigh the decision whether or not to take this type of case before the grand jury. The ABA Standards Relating to the Prosecution Function § 3.9 (Approved Draft, 1971), provides, in pertinent part:

(a) In addressing himself to the decision whether to charge, the prosecutor should first determine whether there is evidence which would support a conviction.

(b) The prosecutor is not obliged to present all charges which the evidence might support. The prosecutor may in some circumstances and for good cause consistent with the public interest decline to prosecute, notwithstanding that evidence exists which would support a conviction. Illustrative of the factors which the prosecutor may properly consider in exercising his discretion are:

(i) the prosecutor's reasonable doubt that the accused is in fact guilty;

(ii) the extent of the harm caused by the offense;

(iii) the disproportion of the authorized punishment in relation to the particular offense or the offender;

(iv) possible improper motives of a complainant; . . . .

In this case, the offense charged was one which was particularly heinous, a statutory rape of the accused's stepdaughter. Prosecuting such a crime should occur only after a most careful review of the case. Such a review was discussed by this court in *Yarbor* in the context of a charge of lewd and lascivious acts toward a child in which the delay was caused by the mother of the victim's reluctance to sign a complaint.

> We find that in a child molestation case of this sort, it was not unreasonable for the state to wait this amount of time on a hesitant mother's decision whether to press charges. Possible emotional effects to the child, injury to the child's reputation, and family disruption, all had to be considered in making her decision.

*Yarbor v. State*, 546 P.2d 564, 567 (Alaska 1976) (footnote omitted). Although the mother in this case was not reluctant, a concern by the district attorney's office over the advisability of bringing charges of a similarly serious nature also suggests that the effects on the victim and her family are factors which must be carefully weighed by the district attorney. Thus, we conclude that the five-month delay is reasonable in light of the investigation undertaken by the police and an understandable reluctance to rush this type of case before the grand jury by the district attorney.

As to the prejudice that Burke claims, the evidence that Ms. Powell and the innkeeper would have presented to the jury was tangential to the case. Although relevant information, it was hardly essential to the defense. It merely goes to suggest that it was unlikely that Burke would have desired intercourse, since he was in a state of intoxication and had just had intercourse with another woman. The materiality of such information is, at best, fairly minimal. Further, we think that the stipulation mitigated a large portion of any prejudice involved. Given this minimal possible prejudice and the reasonableness of the delay, we find no deprivation of due process flowing from the five-month pre-indictment delay in this case.[5]

## II. ADMISSIBILITY OF EVIDENCE OF PRIOR SEXUAL MISCONDUCT OF THE ACCUSED WITH THE SAME VICTIM

The superior court, after extensive pretrial hearings and hearings during trial, allowed introduction of evidence that Burke had on several prior occasions, since his stepdaughter M.B. was nine, forced her to have intercourse with him. Specifically, M.B. testified that the first time that Burke had made her have intercourse with him was in the third grade when she was nine or ten. She stated that he had had intercourse with her a total of four or five times. One time occurred two days before the incident in question and was corroborated by

---

5. *Compare* this court's only finding of a due process violation, *Marks v. State*, 496 P.2d 66, 68–69 (Alaska 1972) (a delay of eight months in which the state made no attempt to justify the delay) *with* five other cases involving an insufficient showing of prejudice and/or sufficient reasons for the delay: *Coffey v. State*, 585 P.2d 514, 519–20 (Alaska 1978) (a delay of four months in a narcotics buy case in which the delay was caused by the "undercover" nature of the agent who only "surfaced" six weeks before the indictment, and the various claims of prejudice were insubstantial); *Yarbor v. State*, 546 P.2d 564, 567–68 (Alaska 1976) (a delay of eight months as a result of repeated reviews of the case by the district attorney's office and a reluctance on the part of the victim's mother to sign the complaint charging lewd and lascivious acts toward a child, with only attenuated claims of prejudice); *Tarnef v. State*, 512 P.2d 923, 931–32 (Alaska 1973) (a delay of approximately one year, with sufficient evidence to go forward available only two months prior to indictment); *P. H. v. State*, 504 P.2d 837, 847 (Alaska 1972) (a delay of seven and one-half months, as to which an inadequate record existed); and *McKay v. State*, 489 P.2d 145, 151 (Alaska 1971) (a delay of two and one-half months in another undercover narcotics case in which no prejudice was shown).

A.B.'s testimony that she heard her father tell M.B. to take off her clothes and that M.B. was crying as a result. In addition, on a weekend trip to Seward at an unspecified time in the past, he had unsuccessfully tried to have intercourse with her. M.B. testified that she submitted to these acts because he had threatened her with a knife, and stated that "he'd cut my neck off if I ever told anyone, or that he'd tell my mom and have her beat me and put me in McLaughlin."

Burke alleges that the trial court committed reversible error in allowing the introduction of this evidence. Prior sexual misconduct is covered generally by Alaska R.Evid. 404(b), which provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[6]

The question before this court is whether, on the facts of this case, the prior sexual misconduct falls within an exception to the general rule against admissibility of prior bad acts.

Although the area of the admissibility of prior sexual misconduct has not previously been specifically addressed by this court, it is an area that has received extensive treatment by the courts in other states and by the commentators. Both McCormick and Wigmore offer separate discussions of prior sexual misconduct, suggesting it is generally held to be itself an exception to the other bad acts rule.[7] As to the specific crime of statutory rape, the common law position, as represented by an overwhelming majority of states, is that evidence of prior similar conduct with the same victim is admissible.[8] The reasoning of such cases, if stated, is often hazy, and is subject to the following criticism by one commentator:

The rule excluding evidence of other offenses has occasionally been relaxed, if not circumvented, when a defendant is charged with a sex crime and the proffered evidence consists of uncharged sex offenses. Although the danger of prejudice to the defendant is particularly acute in such cases, the standards which the courts have applied in determining admissibility have not always been consistent or clear. As a result, evidence of other sex offenses has frequently been admitted in seeming violation of the exclusionary rule. The chief difficulty has been characterizing the purpose for which the evidence is offered, the crucial step in a determination of whether the evidence

---

**6.** The commentary on this part of Rule 404 notes:

Subdivision (b) deals with a specialized but important application of the general rule excluding circumstantial use of character evidence. Consistently with that rule, evidence of other crimes, wrongs, or acts is not admissible to prove character as a basis for suggesting the inference that conduct on a particular occasion was in conformity with it. However, the evidence may be offered for another purpose, such as proof of motive, opportunity, and so on, which does not fall within the prohibition. In this situation the rule does not require that the evidence be excluded. No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence, in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under rule 403.

Commentary to Alaska R.Evid. 404, at 77 (1980). *See also Coleman v. State*, 621 P.2d 869 (Alaska 1980); *Adkinson v. State*, 611 P.2d 528 (Alaska 1980); *Oksoktaruk v. State*, 611 P.2d 521 (Alaska 1980); *Harvey v. State*, 604 P.2d 586 (Alaska 1979); *Frink v. State*, 597 P.2d 154, 169–70 (Alaska 1979); *Eubanks v. State*, 516 P.2d 726, 730–31 (Alaska 1973), for recent considerations of the question of the admissibility of "other crimes" evidence.

**7.** C. McCormick, Law of Evidence § 190, at 449–50 (2d ed. 1972); 2 J. Wigmore, Evidence § 398 (3rd ed. 1940 and 1979 Supps.).

**8.** 1C. Torcia, Wharton's Criminal Evidence § 250, at 577–81 (13th ed. 1972 and 1980 Supps.); Annot., Evidence-Similar Sexual Offense, 77 A.L.R.2d 841, § 4, at 852 (1961 and 1980 Supps.); *see also* 1P. Herrick, Underhill's Criminal Evidence § 212 & n.5 (6th ed. 1973 and 1978 Supps.); 2 J. Wigmore, Evidence § 402 (3d ed. 1940 and 1977 Supps.); E. Cleary,

falls within a recognized exception to the exclusionary rule.[9]

Given this confusion, we have undertaken an examination of the possible grounds for admission of such evidence.[10]

The primary reason given for allowing evidence of prior sexual misconduct is the special exception of lewd disposition.[11] This exception is contrary to the general position of Rule 404(b) that evidence of prior bad acts is inadmissible to show a criminal disposition.[12] The rationale underlying admissibility of prior sexual misconduct is not often stated. The best summary and analysis of this exception is given by Professors Lempert and Saltzburg:

A second situation where many courts admit other crimes evidence to show propensity is where defendant is charged with a sex crime. This use directly contravenes the propensity rule, since the evidence of other crimes is admitted to support the specific inference that the defendant who committed one sex crime probably committed another. In the majority of jurisdictions, however, this exception is tempered by the requirement that the other sex crimes be shown to have occurred with the partner or victim of the crime charged. The theory is that what is being shown is not general propensity to crime but propensity to criminal activity with the same person.

---

McCormick, Law of Evidence § 190, at 449–50 (2d ed. 1972).

9. Comment, *Defining Standards for Determining the Admissibility of Evidence of Other Sex Offenses*, 25 U.C.L.A.L.Rev. 261, 261 (1977) (footnotes omitted).

10. The state notes the following qualification of McCormick on his consideration of various exceptions to the general rule.

> [T]he list [of exceptions] is not complete, for the range of relevancy outside the ban is almost infinite; and further . . . the purposes are not mutually exclusive, for a particular line of proof may fall within several of them. Neither are they strictly coordinate. Some are phrased in terms of the immediate inferences sought to be drawn, such as plan or motive, others in terms of the ultimate fact, such as knowledge, intent, or identity which the prosecution seeks to establish.

C. McCormick, Law of Evidence § 190 at 448 (2d ed. 1972) (footnote omitted).

11. *See, e. g., State v. McDaniel*, 580 P.2d 1227, 1230 (Ariz.App.), *cert. denied*, 439 U.S. 1119, 99 S.Ct. 1028, 59 L.Ed.2d 79 (1978) (exception where offense involved unnatural sexual conduct and prior bad acts are sufficiently similar in nature and were committed near in time to the crime charged); *People v. Sylvia*, 351 P.2d 781, 785 (Cal.1960) (exception for evidence of other not too remote sex offenses with the prosecuting witness to show lewd disposition or intent of defendant towards prosecuting witness); *State v. Minns*, 454 P.2d 355, 358 (N.M. 1969) (exception for other or similar sex offenses committed by defendant with prosecuting witness, if not too remote, to show lewd and lascivious disposition of defendant toward prosecuting witness and as corroborating evidence); *State v. Schut*, 429 P.2d 126, 128 (Wash.1967).

12. The California appeals court in *People v. Covert*, 249 Cal.App.2d 81, 57 Cal.Rptr. 220, 225 n.5 (Cal.App.1967), *overruled, People v. Thomas*, 20 Cal.3d 457, 143 Cal.Rptr. 215, 573 P.2d 433 (Cal.1978), found this distinction illusory, stating:

> [T]here is room to challenge the accuracy of statements prohibiting evidence of prior offenses when directed at proof of *criminal disposition*. Where successive sexual acts are inflicted upon a single victim, the courts have received the evidence to show *lewd disposition* or inclination toward the prosecuting witness. In a sex offense case the difference between *criminal* disposition and *lewd* disposition disappears. Nor is there any line dividing the defendant's lewd disposition as it manifests itself in repeated acts upon one or several persons. [emphasis in original] [citations omitted]

A commentator noted:

> The court's liberality in admitting evidence in this type of crime is somewhat illogical. Since natural prejudice against the sex offender is so great, it would seem that he should be afforded more, rather than less, protection. The reason for this liberal admissibility is not clear, but appears to rest on a belief that other acts with the prosecutrix show lust of the defendant for this particular girl rather than mere disposition to commit this type of crime. . . . Such reasoning appears to be little more than rationalization to explain a complete departure from the exclusion rule which will not fit this situation.

J. Gregg, *Other Acts of Sexual Misbehavior and Perversion as Evidence in Prosecutions for Sexual Offenses*, 6 Ariz.L.Rev. 212, 219 (1965), *quoting* Note, *Evidence of Defendant's Other Crimes: Admissibility in Minnesota*, 37 Minn.L. Rev. 608, 614 (1953).

The exception arose at a time when consensual sex crimes, such as adultery and fornication, more often reached trial. In this context, the exception makes sense, for the probative value of earlier acts in an ongoing relationship appears especially high. However, as with common plan evidence, evidence of other sex crimes will be more prejudicial than probative when the evidence linking the defendant to the other crime is either weak or basically the same as that linking the defendant to the crime charged. The evidence is also substantially less probative when only one or two similar crimes are alleged to have been committed, because one cannot then assume that a relationship exists which makes repetition of the crime particularly likely.[13]

Since the alleged prior acts in the case at bar are with the same victim, we need not consider the more difficult questions of whether evidence of prior sexual misconduct with other victims should be allowed.[14] While it is called an exception for a "lewd disposition," the rationale is to provide the fact finder with highly probative information of the ongoing relationship between the accused and the victim. Another commentator has noted:

It is possible that the majority of courts have adopted an exception that makes sense but which has not been adequately explained or analyzed. The narrow exception grew up in the context of prosecutions for sexual crimes that were consensual. A successful conviction often depended primarily on whether a jury believed the story that the prosecutrix told. Ordinarily consensual sexual affairs are kept as secret as possible. Even so, each such incident (if it has in fact occurred) tends to give rise to certain circumstances that witnesses will note or that the prosecutrix may remember. The evidence that remains from any one particular incident (other than the words of prosecutrix) may be quite sketchy and not very convincing. But evidence of all the incidents taken together may provide a pattern that tends to make the alleged incident appear much more plausible and probable. That the prosecutrix is the object of all the offenses is the factor that unifies the various offenses and gives

---

**13.** R. Lempert and S. Saltzburg, A Modern Approach to Evidence 220–21 (1977) (footnotes omitted).

**14.** *See State v. Treadaway*, 568 P.2d 1061, 1064 n.2 (Ariz.1977) (en banc), *appeal after remand*, 583 P.2d 229 (Ariz.1978) (en banc). In this regard, Lambert and Saltzburg noted: ·

So long as the same victim requirement applies in the area of sex crimes, evidence of other sex crimes is likely to be inadmissible on propensity when the more serious sex crimes are charged. Violent rapists and men who sexually assault children may never attack the same person twice. However, some courts faced with these violent offenses have broadened the existing sex crime exception to allow evidence of similar crimes with different victims. The theory is that a violent or 'abnormal' sexual assault indicates a perverted personality, hence a particularly high probability that one sex crime will be followed by another. The evidence, however, does not suggest that rapists and child molesters have particularly high rates of recidivism.

The jurisdictions which declare evidence of other sex crimes with different victims admissible to show propensity are a distinct minority, but appellate courts dealing with other sex crimes evidence are so adept at finding other exceptions under which the other crimes evidence may be admitted that one must conclude that the propensity rule has broken down in this area. To give just one example, consider the Iowa case of *State v. Schlak.* [111 N.W.2d 289 (Iowa 1969)] There the defendant was accused of sexually molesting a fifteen year old girl, and the court upheld the admission of evidence of other attacks on different victims on the grounds that they showed a motive, the motive being the defendant's 'desire to gratify his lustful desire by grabbing or fondling young girls * * *.' Clearly the evidence is only relevant in that it suggests a propensity to assault young girls. One wonders whether the Iowa court would have condoned the admission of evidence of other thefts in a trial for theft on the grounds that it showed the defendant's 'desire to satisfy his greedy nature by grabbing other people's belongings.' Perhaps they would if theft left them as upset and uncomprehending as a sexual assault on a fifteen year old.

R. Lampert and S. Saltzburg, A Modern Approach to Evidence 221 (1977) (footnotes omitted). *But see Simpson v. State*, 587 P.2d 1319, 1320–21 (Nev.1978).

them a strong relevance to the offense charged. It may be that this is the idea that courts have shorthanded by use of the phrase 'admissible to show a lustful disposition for the prosecutrix. [15]

While its origins may have been in consensual crimes, the rationale is equally applicable to the statutory rape in the case at bar which was far from consensual.

■ A closely related rationale was advanced by the state in its position that the evidence is justifiable as background information to explain M.B.'s testimony in its context. A related position was taken in *State v. Kristich*, 359 P.2d 1106, 1109 (Or. 1961), *appeal after remand*, 383 P.2d 380 (Or.1963), a case involving seduction of a young girl, where the court, in admitting evidence of a prior history of seduction of this girl, noted:

> It was, of course, necessary for the state to prove the act charged. If the act had been accomplished by force or some coercive process against resistance it perhaps would have been immaterial to the jury's understanding of the case to have limited the evidence to the one act complained of. Forcible rape at a given time and place need not require a background of previous conduct to make the act believable. Here, however, as we have al-

ready pointed out, it would have been an unnatural and thus unbelievable story to have described only the particular incident without some background to explain the victim's ready acquiescence. So the state was obliged to show why the act could occur in the manner charged. The evidence was part and parcel of the crime actually charged.

Whether the evidence is justified as background or the ongoing nature of the relationship is probative, we think this nexus of reasons justifies an exception to the general rule against admissibility. Therefore, we need not consider other grounds advanced for the admissibility of this evidence. However, a determination that the evidence is admissible under Rule 404(b) does not end our inquiry.

■ When prior acts involve sexual misconduct, the trial court should carefully weigh the probative value of such evidence against its prejudicial effect.[16] The probative value in this case was significant. It reflected a history of prior sexual assault, and there was corroboration that both the event charged and at least one of the prior acts occurred. However, the damaging effect of such information was substantial. It greatly bolstered the victim's story and

---

**15.** J. Gregg, *Other Acts of Sexual Misbehavior and Perversion as Evidence in Prosecution for Sexual Offenses*, 6 Ariz.L.Rev. 212, 219 (1965). *See also State v. Treadaway*, 568 P.2d 1061, 1065 (Ariz.1977) (en banc), *appeal after remand*, 583 P.2d 229 (Ariz.1978) (en banc) (requiring, as a prerequisite to admissibility, medical testimony that a three year old act of sexual misconduct tends to show continuing emotional propensity).

**16.** Alaska R.Evid. 403 states, in part:

> Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice . . . .

The Nevada Supreme Court in *McMichael v. State*, 577 P.2d 398, 401 (Nev.1978), commented on the difficult task of weighing such evidence:

> Because of the dangers of creating assumptions of guilt in the minds of the triers of fact, the risks attendant to compelling the accused to meet collateral charges and possible confusion of the issues, this exception mandates proof of similar offenses which are near in time to the principal offense and which do

not apply to mere criminal propensities in general but rather to specific sexual proclivities. The evidence should be received with extreme caution, and if its relevancy is not clear, the evidence should be excluded. [citations omitted]

The Nevada court also noted the care with which the trial court handled this evidence:

> [I]mmediately after the victim was permitted to testify concerning recent similar past and subsequent sexual acts, the trial court admonished the jury as to the limited purpose of the admitted evidence. Further, the court gave the jury a cautionary instruction to the same effect. . . . The record indicates that the trial court was sensitive to the possible prejudicial effect of accumulative testimony of appellant's prior and subsequent sexual proclivities.

*Id.* Although the trial court in the case at bar issued no admonishment, a cautionary instruction was given that this evidence was only for the purpose of "the disposition or intent of the defendant toward such female."

revealed to the jury that this alleged incident was not an isolated occurrence but part of a history of rape. We conclude the superior court did not abuse its discretion in admitting this evidence.

## III. ABUSE OF DISCRETION IN THE DENIAL OF A CONTINUANCE AFTER LACK OF FULL DISCOVERY

Burke next claims as error that the state failed to give specific and timely notice of certain prior sexual conduct by Burke with the victim which the state intended to use in its case in chief, and that the court failed to give a needed continuance as a result of a "new discovery" of prior bad act evidence. At the beginning of trial, the state informed the court of its intention to seek admission of prior bad acts and made an offer of proof. Burke's trial counsel informed the court that, although he had information that other acts had occurred, he had no previous disclosure of the incident two days before the charged offense and that "it was witnessed by one of the sisters." The state responded that Burke's trial counsel had been given discovery of this information:

> [W]hat we're referring to is a statement by [M.B.'s sister], a copy of which Mr. Bryson [Burke's trial counsel] has had for probably seven or eight months. In the statement the young girl outlines the extent of her witnessing this event. The only problem is that this statement, when it was given by this young lady a year ago—she was nine years old; she gave it to Investigator Hildreth. [He] understood her to mean that she was conveying to the officer what she had heard and observed on the night of the—October 1, when in fact that was not October 1; it was two nights prior to that. And I became aware of this when I interviewed this little girl a few days ago; and that same day . . . I called Mr. Bryson, alerted him to the fact that in the police report where it says that it had occurred on the date of the rape that in fact that was incorrect, that he should be advised that it had occurred two days before.

Burke's counsel was pacified by this explanation. It seems his primary concern was that there was additional witnessing of which he was unaware. From the record, it is unclear whether he withdrew his motion for a continuance. The record does not disclose whether the superior court ever specifically addressed the issue.

Burke's counsel also twice requested continuances at trial when it appeared that M.B. and her sisters would testify that Burke had made specific threats against M.B. in September and October to force her to submit to intercourse. The superior court denied a protective order covering this testimony. The superior court was uncertain that such testimony might occur, and it seemingly also denied the request for a continuance. Burke now argues that these later requests for continuances are renewals of the earlier request. However, although both continuances deal with prior act testimony, it seems that the requests for continuances were to respond to specific "new" testimony. Since it is only the first continuance that Burke addressed in his opening brief, it will be the only one we consider.

█ A request for continuance is a matter committed to the discretion of the trial court, and a denial will not be overturned on appeal absent an abuse of discretion. *Salazar v. State*, 559 P.2d 66, 71–72 (Alaska 1976). The primary focus for such an inquiry is the reason for the continuance. *Id.* at 72.

█ In this case, the reasons advanced for the continuance were twofold. One was for general preparation to rebut the prior bad acts testimony. The other and more specific reason was based on the claim of "new" testimony.

As to general preparation for rebutting of prior bad acts testimony, we do not think that this is an adequate basis for a continuance. The record states that Burke's counsel had been aware for over six months prior to trial of the testimony given by M.B. and her sisters as to prior sexual attacks on M.B. Such evidence was clearly both pro-

bative and prejudicial. Counsel should have expected that the prosecution would seek the introduction at trial of such evidence.

Burke also argues, as a basis for his need for a continuance, that the evidence of those incidents was extremely vague. The primary testimony on this subject was that of the victim, M.B. No doubt, the vagueness of her memory of the prior incidents made the defense difficult, but such vagueness was quite understandable given her age and the unpleasantness of the memories involved.

In *State v. Jerousek*, 590 P.2d 1366, 1373 (Ariz.1979) (en banc), appellant contended that the prior bad acts were too vague to be admitted into evidence. The court rejected this contention, stating:

> We do not agree with the defendant that the evidence of his prior bad acts was vague and uncertain. In child molestation cases, the defendant can be convicted on the uncorroborated testimony of the victim. The victim testified in detail regarding a previous incident when the defendant told her to hide in the closet because his wife had returned home. She also testified that she had 'played games' with him on five other occasions, always at his house and always during the day in his bedroom. On cross-examination, she indicated that she had played games with the defendant six or seven times and that each time this happened the defendant had molested her. Although the victim could not testify as to the exact dates on which these prior acts occurred, she was certain of their occurrence and certain that they had occurred earlier in the summer.

> It must be remembered that the victim was a young girl. As we stated in *State v. Berry*, 101 Ariz. 310, 314, 419 P.2d 337, 341 (1966):

> > 'If we were to find a fatal variance under such circumstances it would seem to behoove one who chooses to sexually assault children at the risk of irreparable psychological and physical damage to his victim, to make sure that the child is sufficiently young to be incapable of effectively testifying as to specific dates in the year and minutes on the clock. We recognize, rather, that it is for the jury to determine the truth of the witnesses' story * * *.'

> In addition to the victim's testimony, the defendant's prior bad acts were evidenced by the testimony of the victim's sister and by the defendant's own confession that 'it started last summer.'

Statements by M.B. and her sisters which discussed these prior bad acts were available a sufficiently long time in advance of trial not to warrant a continuance despite any vagueness.

A much more substantial reason for granting a continuance is Burke's claim that they needed to confront "new" evidence. Criminal discovery in Alaska is liberal in the hope of preventing surprises at trial. In this case, the alleged "new" evidence had been given to defense counsel by the prosecution several days before trial. It was tendered by the prosecution immediately upon its discovery when A.B. was interviewed, and it was discovered that the first interview had incorrectly concluded that the crying A.B. had heard occurred on the night of October 1 when actually what A.B. had referred to was crying she had heard a few days before when Burke had made a prior sexual assault. Thus, the new evidence was only the existence of an inaccuracy as to which of two attacks the victim's sister could corroborate. Before being informed of the inaccuracy, Burke's counsel surely would have been preparing the case under the assumption that the victim's sister had heard crying and other statements to corroborate the specific sexual assault for which Burke was accused. Such evidence would no doubt have been given serious attention. To be informed a few days before trial that this corroborative testimony related to another incident, we think, would not have demanded substantial additional preparation. Thus, as to the claim of "new" evidence, we conclude that the superior court did not abuse its discretion in denying the continuance.

## IV. DENIAL OF MOTION FOR ACQUITTAL FOR LACK OF CORROBORATION

At the close of the prosecution's case in chief, Burke moved for a judgment of acquittal because of lack of corroboration. Burke did not further elaborate on his grounds for his motion at trial, and it was denied, without further argument, by the court. The court also instructed the jury that corroboration is not necessary to support a conviction.

This issue was presented to the court in *Bakken v. State*, 489 P.2d 120, 127 (Alaska 1971). There we said:

> Our holding on this issue necessarily embodies the further conclusion that no corroboration of the prosecutrix's accusation is required in statutory rape cases. In this appeal, Bakken has argued that his motion for judgment of acquittal should have been granted because Bessie Wilson's testimony that he had intercourse with her should not have been believed without corroboration, and that the corroboration provided was inadequate. The state argues that no corroboration was required, or even if it was, adequate corroboration was provided.
>
> As the briefs of the parties show, there is good authority both for and against a requirement of corroboration of the prosecutrix's testimony in a statutory rape case, at least where her testimony is equivocal or incredible or she has been impeached. On the one hand, false accusations are common and difficult to disprove in these cases. On the other hand, corroboration may be impossible in a nonforcible rape situation.
>
> We are in agreement with the state's position that if corroboration was required adequate corroboration is present in the record. On the other hand, we remain unpersuaded that we should adopt a rule which requires the prosecutrix's testimony to be corroborated in all statutory rape cases, or in only those cases where the victim's testimony is equivocal, incredible, or has been impeached.

Burke argues that the court's ruling was only dictum, due to the existence of corroboration in that case. He argues that the court left open the possibility that corroboration is required under circumstances in which the victim's testimony is equivocal, incredible or impeached or that the court should reconsider its holding in *Bakken*. Further, Burke seems to suggest that specific medical testimony must be presented to certify that M.B. had been penetrated to prove rape.

No request for such specific medical examination was ever made at trial. As to this specific type of corroborative testimony, the issue is not properly before this court. Further, as to the requirement of corroboration, medical testimony is not what is generally meant by that term. Corroboration may take many forms and no corroboration requirement in other jurisdictions requires such medical testimony.

In this case, there does appear to be corroboration of the victim's story from Cecilia Burke's finding Burke and M.B. in bed, Burke naked, and M.B. with her nightgown pulled up.

The existence of such corroborative evidence is sufficient so that if this were the only question on appeal concerning corroboration, we would not have to decide whether corroboration is necessary in statutory rape cases. However, in the case at bar, the jury was specifically instructed that no corroboration was necessary for conviction. Burke has asserted error in the giving of this instruction, and this claim will be taken up later in this opinion. As a preliminary, regardless of whether it was dicta or not in *Bakken*, we hereby hold that no corroboration is necessary, doing away with this requirement. Since *Bakken*, additional case law and commentary have shown the continuing move toward total abrogation of any rape corroboration requirement.[17] We are persuaded that such a requirement is inappropriate.

**17.** *See, e. g.*, Judge Skelly Wright's well-reasoned opinion in *United States v. Sheppard*, 569 F.2d 114 (D.C.Cir.1977). *See also* Note, *Repeal of the Corroboration Requirement: Will*

## V. INSTRUCTION ON VICTIM'S TESTIMONY

The court did not give defendant's Proposed Instruction 10, which read:

A charge such as that made against the defendant in this case is one which is easily made and, once made, difficult to defend against, even if the person accused is innocent.

Therefore, the law requires that you examine the testimony of the female person named in the indictment with caution.

The defendant objected to this refusal to give the requested instruction:

MR. BRYSON: Your Honor, the first objection I would have is to the rejection of defendant's proposed jury instruction number 10, that is, the former CALJIC instruction 10.22, regarding a charge such as that made against the defendant is easily made and difficult to defend against. I believe Your Honor's position is that that has been deviated from in California due to a specific California case. I would submit that that's not Alaska law and on the facts of this particular case that an instruction such as this is desired by the defense and would be such that it should be given.

THE COURT: All right. So that it should be clear: it's not simply because it's been rejected by CALJIC as a proper instruction, but I also believe it is objectionable in its own right.

Burke argues that the superior court committed error by its failure to give this instruction. He notes that this court specifically referred to the safeguarding value of this instruction in *Bakken v. State*, 489 P.2d 120, 127 (Alaska 1971):

We think the accused's interest in a fair trial was adequately safeguarded by the instruction which the court gave the jury on this issue. In this regard, the jury was instructed that:

It is not essential to a conviction that the testimony of the minor child who is [the] prosecuting witness be corroborated by other evidence, provided that from all the evidence you are convinced beyond a reasonable doubt of the defendant's guilt. However, a charge of statutory rape such as made against the defendant in this case, is one which generally speaking, is easily made, and, once made, difficult to disprove, even if the defendant is innocent. Therefore, I charge you that the law requires that you examine the testimony of the minor child with caution.

The state advances three arguments in rebuttal. First, it asks this court to join the California court in finding that this instruction should never be given. In the alternative, the state asks that this court find that it should only be given in cases where the victim's testimony is lacking in credibility, and thus that it is not applicable to this case. Finally, the state argues that if this court concludes that this instruction should be given in cases such as the one at bar, the failure to give such an instruction is harmless error in this case.

 The California Supreme Court rejected the use of this instruction in *People v. Rincon-Pineda*, 14 Cal.3d 864, 123 Cal. Rptr. 119, 538 P.2d 247 (Cal.1975). The court examined the 17th-Century English origins of the instruction, and concluded that criminal procedural protections were quite different then and that the supposed rationales for the rule (the ease of bringing rape charges and the difficulty of defending them) are no longer valid.

Whatever might have been its historical significance, the disapproved instruction now performs no just function, since criminal charges involving sexual conduct are no more easily made or harder to defend against than many other classes of charges, and those who make such

*it Tip the Scales of Justice?*, 24 Drake L.Rev. 669 (1975); Comment, *Criminal Law—Rape— Sufficiency of Evidence to Support Conviction—Corroboration of Victim's Testimony*, 15 Duquesne L.Rev. 305 (1976–77); J. Pratt, *The*

*Demise of the Corroboration Requirement—Its History in Georgia Rape Law*, 26 Emory L.J. 805 (1977). *See generally* Comment, *The Rape Corroboration Requirement: Repeal Not Reform*, 81 Yale L.J. 1365 (1972).

accusations should be deemed no more suspect in credibility than any other class of complainants. When such prosecutions present close evidentiary questions, they do so not because a victim—generally a woman—claims to have been sexually assaulted or abused, but because the alleged crime took place in evanescent circumstances difficult to reconstruct in court, a happenstance which may plague prosecution of any crime involving specific intent, and which is indeed a typical occurrence in such non-sexual crimes as fraud and narcotics transactions. A cautionary instruction bred in the circumstances of 17th century criminal rape and criminal justice need not be disinterred in a contemporary California courtroom in order to insure that a defendant faced essentially by a single accuser will not be casually convicted without due consideration of the relative weight of the evidence.

*Id.* 14 Cal.3d 864, 123 Cal.Rptr. 119, at 260. The California Supreme Court concluded that the normal instructions given on the credibility of witnesses are sufficient and appropriate instructions in such cases.

While formerly a widely accepted and widely used instruction, this cautionary instruction has come under increasing attack. Several state legislatures have, by statute, forbidden its use. Several other courts have also held that this cautionary instruction should not be given, generally holding that it is an inappropriate comment on the evidence.[18] We find persuasive the combined weight of this reasoning. We find no error in failure to give this instruction and take this opportunity to prohibit prospectively the use of such an instruction.

## VI. JURY INSTRUCTION ON INCONSISTENT TESTIMONY

■ Burke also argues that the trial court committed reversible error by giving the following instruction:

In weighing the significance of any discrepancies in the evidence, consideration should be given to whether the discrepancies pertain to facts of importance or only to trivial details. Discrepancies in a witness' testimony, or between his testimony and that of other witnesses, does not necessarily mean that the witness should be discredited. Failure of recollection is a

---

**18.** *See* Arabian, *The Cautionary Instruction in Sex Cases: A Lingering Insult,* 10 Southwestern L.Rev. 585 (1978).

The trial court in *Rincon-Pineda* had stated:
I find that the giving of such an instruction in this case is unwarranted by law or reason, that it arbitrarily discriminates against women, denies them equal protection of the law, and assists in the brutalization of rape victims by providing an unequal balance between their rights and the rights of the accused in court.

*Id.* 14 Cal.3d 864, 123 Cal.Rptr. 119, at 588–89. *See also State v. Settle,* 111 Ariz. 394, 531 P.2d 151, 153 (1975) ("A cautionary instruction such as the one sought by the defendant is a suggestion to the jury to particularly question the testimony of the prosecuting witness and is a comment upon the weight of the evidence. Such an expression of personal opinion by the judge concerning the facts of this case is contrary to article 6, section 27, of the Arizona Constitution, A.R.S."); *State v. Smoot,* 99 Idaho 854, 590 P.2d 1001, 1009 (1978); *Taylor v. State,* 257 Ind. 664, 278 N.E.2d 273 (1972); *State v. Fedderson,* 230 N.W.2d 510, 515 (Iowa 1975) ("There are at least four vices in the first paragraph of that instruction. First, it constitutes a comment on the evidence. Second, it

applies a stricter test of credibility to the rape victim than to other witnesses in the trial. Third, it applies a stricter test of credibility to rape victims than to victims of other crimes. Fourth, trial courts have been accorded an indiscriminate right to give or refuse to give the instruction absent any guidelines for so doing."); *State v. Mellis,* 470 P.2d 558, 560 (Wash.App.1970) ("An instruction by the judge that implicitly or impliedly conveys to the jury the judge's personal opinion concerning the worth of defendant's testimony is a prejudicial comment upon the evidence.")

In *State v. Smoot,* 99 Idaho 854, 590 P.2d 1001, 1009, n.4 (1978), the court also noted that "[o]lder decisions have disapproved of the instructions on the basis that they do not embody a principle of law and therefore should not be included as an instruction. *Doyle v. State,* 39 Fla. 155, 22 So. 272 (1897); *Black v. State,* 119 Ga. 746, 47 S.E. 370 (1904); *Crump v. Commonwealth,* 98 Va. 833, 23 S.E. 760 (1894)." *See also* R. Eisenberg, *Abolishing Cautionary Instructions in Sex Offense Cases: People v. Rincon-Pineda,* 12 Crim.L.Bull. 58 (1976); Comment, *Criminal Procedure—Instruction to Jury That Rape Is Easy to Charge and Difficult to Disprove Is No Longer to be Given,* 7 Texas Tech.L.Rev. 732 (1976).

common experience; and also two persons witnessing the same incident or transaction rarely agree completely on the details, especially with regard to time and distance. However, a willful falsehood is always a matter of importance and should be seriously considered. A witness willfully false in one part of his testimony may be distrusted in other parts.

Whenever possible, you will reconcile conflicting or inconsistent testimony, but where it is not possible to do so, you should give credence to that testimony which, under all the facts and circumstances of this case, appears to you most worthy of belief.

Specifically, he objected to the final words of the second paragraph and argues that they establish a lower standard of proof than the constitutionally mandated "proof beyond a reasonable doubt." Burke argues that this language allows conviction of the defendant with only the victim's testimony being "most worthy of belief" compared to the defendant's.

The state initially responds that this issue was not properly raised below and can only be considered under the plain error standard. The only possible ground for the preservation of this point on appeal is the following exchange:

MR. BRYSON: I also would feel that it would be preferable in this case to give defendant's proposed jury instruction number 8, regarding discrediting and impeachment by contradictory evidence or failure to say things or saying things on other occasions inconsistent with the present testimony. I think in this case, where inconsistencies are critical, that this language lays it out more clearly and more easily for the jury to digest and rely upon than the instruction given by the court.

THE COURT: All right, I think credibility of witnesses is contained in instructions number 18 and 19, and those incorporate the thoughts contained in the instruction you request.

Burke's proposed jury instruction 8 reads:

A witness may also be discredited or impeached by contradictory evidence; or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars; and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or admission is 'knowingly' done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

We agree with the state that Burke has failed to comply with Criminal Rule 30(a) by not distinctly informing the trial court as to the specific wording of the instruction he deemed objectionable.[19] In this case, the superior court was not pointed to the specific language of the instruction that was thought to be objectionable nor the grounds therefor. Thus, we shall analyze the claim of error under the plain error standard, and decide whether the error was obvious and substantial and resulted in a miscarriage of justice.[20]

The separate instruction given to the jury on burden of proof reminds the jury, at

19. Alaska R.Crim.P. 30(a) provides, in pertinent part:

No party may assign as error any portion of the charge . . . unless he objects thereto . . . stating distinctly the matter to which he objects and the grounds of his objections.

20. Alaska R.Crim.P. 47(b) provides:

Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

This court noted in *Evans v. State*, 550 P.2d 830, 843 (Alaska 1976), *appeal after remand*, 574 P.2d 24 (Alaska 1978) (citations omitted):

[T]he defect if any in Instruction No. 8 does not warrant notice in this case. To constitute 'plain error' the defect must be both

three points, that they must find proof beyond a reasonable doubt.[21] The instruction pertaining to weighing conflicting evidence offers the jury assistance only in regard to the immediate problem of which testimony to believe. The "most worthy of belief" language in the questioned instruction operates only as a guide to a preliminary determination concerning conflicting testimony. Once the question of what weight is to be given the conflicting testimony is determined, the "most worthy of belief" testimony is then considered with all other evidence at trial by the trier of fact in making the ultimate determination of whether proof beyond a reasonable doubt has been demonstrated. We do not find the questioned instruction particularly confusing or a misstatement of the law, although we think that it would be preferable to omit the last sentence of the questioned instruction. Thus, we find no plain error.

## VII. JURY INSTRUCTION ON NO CORROBORATION

Burke, in his last claim of error on appeal, contends that the giving of the following instruction was reversible error:

> obvious and substantial. The giving of an incorrect instruction should be recognized as plain error only when necessary to prevent a miscarriage of justice. The defect must have been obviously prejudicial. If it appears that failure to give defendant's proposed instruction did not contribute to the verdict, reversal is not required.

21. The jury was instructed as follows:
> The defendant is charged in the indictment with statutory rape contrary to AS 11.15.120 which reads in pertinent part:
> A person who ... (2) being 16 years of age or older, carnally knows and abuses a person under 16 years of age, is guilty of rape.
> In order for the defendant, Luther Burke, Jr., to be found guilty of rape as alleged in the indictment, *the evidence must establish beyond a reasonable doubt* each of the following:
> (1) that on or about the 1st day of October, 1976, at or near Anchorage, Alaska,
> (2) the defendant, Luther Burke, Jr., being then and there over 16 years of age,
> (3) the defendant did unlawfully carnally know and abuse [M.B.], a female person under 16 years of age.
> If you determine from your consideration of all the evidence that any of these proposi-

It is not essential to a conviction of a charge of rape that the testimony of the witness with whom sexual intercourse is alleged to have been committed be corroborated by other evidence.[22]

This instruction is the obverse of a cautionary instruction concerning the victim's testimony and, instead of suggesting that the victim's testimony be treated with caution, it alerts the jury to the fact that nothing more than the victim's testimony is necessary to convict.

■■■■ In our view, to instruct that a victim's testimony need not be corroborated by other evidence unduly emphasizes the lack of a need for corroboration without similarly indicating that other witnesses' testimony need not be corroborated. Particularly where the defendant has given a statement or taken the stand, it would be prejudicial to indicate that the victim's testimony need not be corroborated without similarly indicating that the defendant's testimony need not be corroborated. Thus, we conclude that the instruction should not have been given. Here, this specific reason

> tions *has not been proved beyond a reasonable doubt*, you must find the defendant, Luther Burke, Jr., not guilty of statutory rape as charged in the indictment.
> If you determine from your consideration of all the evidence that each of these propositions *has been proved beyond a reasonable doubt*, you must find the defendant guilty of statutory rape. [emphasis added]

22. Burke's counsel at trial objected as follows:
> MR. BRYSON: I also would object to the plaintiff's proposed instruction number 6 regarding noncorroboration in a crime of this sort. Again, what I'd be relying on is the general authority and the problems that arise from the case outlined by the defendant's proposed instruction relating to prior occasions and whether or not anything happened on prior occasions and the impact of that. As authority for that case, I cited a case named *People v. Stanley*, 433 P.2d 913. I believe that *People v. Stanley*, dealing with juvenile witnesses and the necessity of corroboration and the problems relating to introducing prior bad acts in a case of that sort dealing with juveniles, sufficiently details the harm which I'm concerned about here from indicating that corroboration is not necessary on these facts.

was not advanced by defense counsel as a ground for objection, and we have concluded in the overall context of the trial that it did not affect Burke's substantial rights so as to constitute plain error.

Affirmed.