**STATE of Utah, Plaintiff and Appellee,**

v.

**Barry Duane MORGAN, Defendant and Appellant.**

**No. 900393–CA.**

Court of Appeals of Utah.

June 7, 1991.

murder.

**1208**

Joel D. Berrett (argued), Roosevelt, for Morgan.

R. Paul Van Dam, State Atty. Gen., Charlene Barlow (argued), Asst. Atty. Gen., for the State.

Before BENCH, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Appellant Barry Duane Morgan appeals from his convictions of two counts of rape of a child, both first degree felonies, in violation of Utah Code Ann. § 76–5–402.1 (1990). We affirm.

## FACTS

We recite the facts from the record in the light most favorable to the jury's verdict. *E.g., State v. Pascual,* 804 P.2d 553

(Utah App.1991). Morgan is the father of twin daughters, one of whom is the victim in this case. In 1986, Morgan was a "tramp miner," and he traveled with his daughters throughout the western United States in search of employment. The family moved to Duchesne, Utah in April of that year. The twins were then thirteen years of age. The victim, M., testified that on three occasions, while in Duchesne, Morgan had sexual intercourse with her. M. did not tell anyone about the incidents when they occurred because no one had believed her on an earlier occasion when she claimed to be molested by a friend of her father's.

M. and her sister were placed in foster care in Dewey, Arizona in December 1988, after a fight with Morgan's live-in girlfriend, Vivian.[1] The twins did not like sharing a home with Vivian and her four children, and there were often fights. On this particular occasion, Vivian had accused M. of wanting to break up the family so that M. could sleep with her father again. M. swore at Vivian, and one of Vivian's children physically attacked M. The twins left the house and called their grandmother, who advised them to call the police. The police eventually placed M. and her sister in a foster home, where M. disclosed that her father previously had had sexual intercourse with her.

Authorities in Arizona notified the Utah authorities and charges were filed against Morgan. At trial in September 1989, Morgan testified that the abuse never occurred. Vivian and her four children testified that M. often made up stories and that Vivian had never made the statement about M. wanting to sleep with her father. M. and her sister testified that not only did the abuse occur, but that there were several other incidents of inappropriate sexual behavior involving their father. In addition, M.'s sister testified that because Vivian was not able to bear any more children, Vivian and Morgan had planned to have one of Vivian's daughters have Morgan's baby for them, and that drugs were provided to Vivian's daughter in pursuit of this

scheme. Counsel for Morgan moved for a mistrial based on this testimony, which motion was denied. The jury found Morgan guilty of two counts of rape of a child.

On appeal, Morgan asserts several errors concerning the admissibility of certain evidence. The admitted evidence of which Morgan complains is as follows: (1) Bond, a social service worker who had interviewed M. and M.'s sister when they were removed from Morgan's home, testified to statements M. and M.'s sister had made to him regarding the events that led to their placement in a foster home; (2) Bond's testimony that Morgan had stated he had pinched the breasts of M. and M.'s sister; (3) M.'s testimony that Vivian and Vivian's children had accused her of wanting to tear the family apart; (4) M.'s testimony that Morgan had been sexually inappropriate with her and had had sexual intercourse with her on occasions other than the incidents charged; (5) M.'s testimony that Morgan would pinch her breasts; (6) testimony that Morgan had beaten M. on one occasion; (7) M.'s sister's testimony that Morgan and Vivian had planned to impregnate Vivian's daughter.

## STANDARD OF REVIEW

■ In reviewing a trial court's decision to admit evidence, we will not reverse that ruling unless a substantial right of the party has been affected. *Salt Lake City v. Holtman*, 806 P.2d 235 (Utah App.1991); Utah R.Evid. 103(a). In addition, error may not be predicated upon such a ruling unless a timely objection was made at the time the evidence was presented. Utah R.Evid. 103.

The State argues that this court should decline to address the majority of Morgan's claims because he did not preserve them for appeal. However, Morgan seeks to avoid the effect of failing to preserve some of these objections by alleging that failure on the part of defense counsel to object to those errors denied Morgan the assistance

1. Morgan later married Vivian.

of effective counsel,[2] and that admission of the evidence was plain error.

■■■ Morgan urges us to reverse his convictions, on the grounds that the evidence regarding his improper sexual conduct with M.'s sister and with M. and other "bad acts" was harmful and affected his rights.[3] The "bad acts" testimony that Morgan objects to concerns evidence of sexual acts by Morgan against M., other than the two incidents of rape charged, and evidence of Morgan beating M. on at least one occasion when Morgan was drunk.[4]

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ As this court recently reiterated in *State v. Montes,* 804 P.2d 543 (Utah App. 1991), an appellant must show both that his trial counsel rendered deficient performance, and that the performance was so deficient that appellant was deprived a fair trial. In other words, Morgan must establish that "absent the errors he claims counsel made, there is a 'reasonable probability of a different result.' " *Id.* at 545 (citations omitted). Morgan has not shown that absent the errors he claims, there is a reasonable probability of a more favorable result. He has merely asserted that trial counsel's failure to object was improper, and that therefore, the convictions should be reversed. This naked assertion, without any underlying analysis, falls far short of the burden that Morgan must meet. Accordingly, his claim of ineffective assistance of counsel is rejected.[5]

## PLAIN ERROR

■ Similarly, notwithstanding a party's failure to object, this court may take notice of "plain errors," that is, errors that should

---

**2.** Morgan alleges that defense counsel failed to object to five improper statements made by witnesses. Our review of the record indicates that defense counsel did object to two of those statements. Therefore, the ineffective assistance of counsel claim applies only to defense counsel's failure to object to what we have numbered statements two, four, and five.

**3.** Morgan correctly asserts that the admissibility of prior bad acts evidence is subject to the protection of Utah R. Evid. 404. Subsection (b) of that rule states that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**4.** Morgan alleges error as to the admission of evidence of sexual acts by Morgan against M.'s sister, and evidence of Morgan and Vivian's plan to impregnate Vivian's daughter. Our review of the record, however, indicates that defense counsel did object to this evidence.

The trial court, in determining the admissibility of such evidence, "must weigh its probative value against its tendency to unfairly prejudice the defendant." *State v. Jamison,* 767 P.2d 134, 137 (Utah App.1989) (citing Utah R. Evid. 403). The general rule concerning abuse of discretion is that the appellate court " 'will presume that the discretion of the trial court was properly exercised unless the record clearly shows to the contrary.' " *State v. Jonas,* 793 P.2d 902, 906 (Utah App.1990) (citations omitted). The record supports the conclusion that the trial court did not abuse its discretion in admitting this evidence. Defense counsel's objections were overruled on the basis that the testimony regarding sexual acts against M.'s sister was elicited as background information, and how the charges against Morgan came forward. While we acknowledge that Utah R. Evid. 404 does not include an exception which specifically addresses this kind of testimony, the prosecutor is entitled to paint a factual picture of the context in which the events in question transpired. *See, e.g., State v. Tanner,* 675 P.2d 539, 548 (Utah 1983) (evidence of prior abusive conduct by caretaker). *See also Burke v. State,* 624 P.2d 1240 (Alaska 1980) (evidence of prior sex crimes admissible as *background information* to explain victim's testimony in context and to provide fact finder with probative information of an ongoing relationship between the accused and the victim); *State v. Kriskch,* 226 Or. 240, 359 P.2d 1106, 1109 (1961) (background information allowed in to show context of forcible rape incident), *appeal after remand,* 235 Or. 1, 383 P.2d 380 (1963); *Crozier v. State,* 723 P.2d 42, 49 (Wyo.1986) (prior bad acts admissible in prosecution for murder of child to form history of the event and "enhance the natural development of the facts.") (quoting *Commonwealth v. Evans,* 343 Pa.Super. 118, 494 A.2d 383, 390 (1985)). As for the evidence concerning Vivian's daughter, defense counsel moved for a mistrial based on the testimony, which was denied.

**5.** Because we decline to evaluate Morgan's ineffective assistance of counsel claim on its merits, we need not pursue the State's invitation to take into consideration the reputation and experience of Morgan's trial counsel.

have been obvious to the trial court and that affect the substantial rights of the accused. *See State v. Eldredge,* 773 P.2d 29, 35 (Utah), *cert. denied by Eldredge v. Utah,* — U.S. —, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989); *State v. Pascual,* 804 P.2d 553, 554 n. 1 (Utah App.1991); Utah R.Evid. 103(d). However, not all rulings which a defendant may object to for the first time on appeal are automatically appraised. "For example, if trial counsel's actions amounted to an active, as opposed to a passive, waiver of an objection, we may decline to consider the claim of plain error." *State v. Bullock,* 791 P.2d 155, 158 (Utah 1989) (citations omitted) (supreme court does not reach the issue of plain error in child sexual abuse case, concluding counsel failed to object as part of trial strategy), *cert. denied by Bullock v. Utah,* — U.S. —, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990). *See also State v. Butterfield,* 784 P.2d 153 (Utah 1989).

■ Therefore, before addressing Morgan's claim of plain error, we must first determine if the failure to object before the trial court was the result of a consciously chosen trial strategy. If so, the failure to object acts as a conscious waiver, and we are precluded from further review. *See Bullock,* 791 P.2d at 158. In the present case, counsel's decision to allow the jury to hear certain testimony was reasonable in light of his trial strategy. During his opening statement, defense counsel told the jury that Morgan had treated his children roughly at times and that they harbored resentment. Defense counsel explained that in an effort to get out of the house and away from Morgan, M. and her sister made accusations which the jury may or may not find to be completely truthful. In his closing argument, defense counsel once again told the jury that if he were in the situation that M. and her sister were in, he too would have fabricated stories to get out. He asked the jury to think about the motives each witness had to tell the truth, and he focused on the testimony of the victim as not "having a ring of truth to it." Throughout trial, defense counsel elicited testimony from various witnesses which went to the reasons M. might have fabri-

cated the incident in question, and drew out inconsistencies in M. and M.'s sister's testimony.

Because the defense strategy was to convince the jury that M. had fabricated the charges against Morgan, it was within counsel's professional discretion to not object to testimony that would aid this strategy. "When assessing counsel's performance, we will not second guess trial counsel's legitimate use of judgment as to trial strategy." *State v. Jones,* 783 P.2d 560, 563 (Utah App.1989) (citing *Codianna v. Morris,* 660 P.2d 1101, 1110 (Utah 1983) and *State v. Wight,* 765 P.2d 12, 15 (Utah App.1988)), *aff'd,* 808 P.2d 1056 (1991). Further, to permit Morgan now to claim that the testimony in question should not have been admitted, "would permit him to present one strategy, lose, and then start over with a whole new strategy." *State v. Belgard,* 811 P.2d 211, 215 (Utah App. 1991). *See also Bullock,* 791 P.2d at 159. Morgan is not entitled to both the benefit of not objecting at trial and the benefit of objecting on appeal. For the foregoing reasons, we decline to address the merits of Morgan's plain error claim.

## ADMISSIBILITY OF HEARSAY

■ Morgan also claims the trial court erred in allowing a witness to testify as to statements made to him by M. and M.'s sister. Morgan contends that under Utah R. Evid. 802, these statements constituted inadmissible hearsay. We disagree with Morgan's assertion that the statements were hearsay. The testimony in question was not offered as proof of the matter asserted—that Morgan had raped M.—but to show the chronology of events leading to the specific incidents at issue. *See L.D.S. v. Stevens,* 797 P.2d 1133, 1138 (Utah App. 1990). Morgan's counsel objected to this testimony several times. The trial court overruled the objections, and cautioned the jury that they could not receive as evidence what one witness says about another's out of court statements. We conclude that the trial court did not abuse its discretion in allowing this evidence to come in.

**1212**

## CONCLUSION

We affirm Morgan's convictions.

BENCH, J., concurs.

ORME, Judge (concurring in the result):

I concur in affirming defendant's conviction and in much of what is said in the main opinion. I do not agree that the statements treated in footnote 4 were properly admitted as "background information" on "how the charges against Morgan came forward." Utah R. Evid. 404(b) does not include a "background information" exception to the general proscription against "prior bad acts" testimony. I have some concern that if such an exception were recognized judicially and given much play, it could effectively gut the general rule. I am persuaded, however, that admission of this testimony was harmless in this case, especially in light of the wealth of other extraneous information that came in without defense objection and apparently pursuant to defense strategy to portray M. as an unbelievable teller of tall tales.

I likewise have considerable trepidation about the discussion under the heading "Admissibility of Hearsay," but also find admission of the statements treated there to be harmless, essentially for the same reason.

I also wish to add a comment about the argument referred to in footnote five of the main opinion. In urging us to view defense counsel's failures to object as part of his deliberate strategy rather than as negligent oversight, the state called our attention to the fine reputation and considerable experience of Morgan's trial counsel, in effect asking us to presume—even more vigorously than we usually do—that his trial decisions were well thought-out and pursuant to sound strategy, no matter how poorly the strategy ultimately fared.

There is at least some basis in Utah law for considering counsel's general performance in evaluating the adequacy of counsel's performance in the case at hand. Although the notion seems not to have been given much life in subsequent cases, in *Codianna v. Morris,* 660 P.2d 1101 (Utah 1983), a pre-*Strickland* case which is nevertheless often still cited,[1] the Court noted that "[t]he objective element [of effective assistance] is measured both by general ability or experience and by performance in the defense of a particular case." *Id.* at 1109.

For two reasons, I think the *entire* focus should be on counsel's performance in the particular case. First, if the appellate court should take positive note of a particularly good reputation, it would seem to follow that some negative inference should be drawn about the performance at trial of an attorney with a lousy general reputation or an attorney with little experience. This is problematic enough, but what do we do with the significant number of attorneys about whom we have no reliable sense of general reputation or skill, one way or the other? Competing testimonials as to general reputation, surfacing for the first time on appeal, would not be welcome additions to our consideration of ineffective assistance claims.

Second, as I previously had occasion to observe, "[a] good overall reputation by counsel is no substitute for careful inquiry by the court since there is no guaranty even an excellent attorney, especially a very busy one, has not botched a particular case." *State v. Pursifell,* 746 P.2d 270, 273 n. 1 (Utah App.1987).

In short, proper evaluation of whether counsel's performance in a particular case was *objectively* deficient should be undertaken free of considerations of reputation and experience and other such *subjective* measures. The performance of both the dean of the defense bar and the recent graduate trying his or her first criminal case should be measured against the same

1. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court adopted the now widely used test for evaluating ineffective assistance claims. That test was first expressly employed by the Utah Supreme Court in *State v. Frame,* 723 P.2d 401 (Utah 1986) (per curiam), an opinion in which *Codianna* was also cited. *Id.* at 405.

objective standard: Was the attorney's performance within "the wide range of professionally competent assistance," due regard being had for the "strong presumption that counsel rendered adequate assistance and exercised 'reasonable professional judgment[?]'" *State v. Frame*, 723 P.2d 401, 405 (Utah 1986) (per curiam) (quoting *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)). That process is improperly skewed at both extremes if counsel's reputation generally is jimmied into the equation.