STATE of Utah, Plaintiff and Appellee,

v.

Robin Mark HALL, Defendant and Appellant.

No. 960690–CA.

Court of Appeals of Utah.

Sept. 11, 1997.

Wesley M. Baden, Vernal, for Defendant and Appellant.

Jan Graham and Kris C. Leonard, Salt Lake City, for Plaintiff and Appellee.

Before DAVIS, P.J., WILKINS, Associate P.J., and BENCH, J.

## OPINION

BENCH, Judge:

Defendant Robin Hall appeals his conviction of aggravated sexual abuse of a child, a first-degree felony. *See* Utah Code Ann. § 76–5–404.1 (1995). We affirm.

## BACKGROUND

The following facts are recited in the light most favorable to the jury's verdict. *See State v. Snyder*, 932 P.2d 120, 122 (Utah.Ct. App.1997).

On July 26, 1995, a father living in Vernal, Utah, asked defendant to watch his three children, including seven-year-old A.C., while he traveled out of town. Defendant agreed, and the father departed the same day. That evening, A.C. slept on a couch in the basement. She was awakened the following morning when defendant, who was sitting beside her, pulled down her shorts and panties and stroked her on the "private." A.C. pretended to be asleep while defendant was touching her. When she pretended to be waking up, however, defendant removed his hand and pulled up her shorts and panties.

Saying nothing to defendant, A.C. immediately went upstairs and took a bath. After getting dressed and eating breakfast, A.C. walked to a friend's house down the street. A.C. told her friend about what had happened that morning, and then left to see her grandmother (Grandmother) at work. Grandmother testified that when A.C. came into the office, she appeared nervous and upset. Grandmother further testified that A.C. started crying as she said that defendant had touched her under the panties on her "private parts."

Pauline Hauer of the Division of Family Services (DFS)[1] and Detective Cari Park of the local police department were notified about the incident. The following day, Ms. Hauer and Detective Park conducted a videotaped interview of A.C. at the police station. Several days later, Detective Park arrested

defendant, who was charged with aggravated sexual abuse of a child. A jury found defendant guilty of the charge.

Defendant raises several arguments on appeal. He contends that the trial court committed plain error when it (1) failed to comply with Utah Code Ann. § 76–5–411 (1995) before admitting A.C.'s hearsay statements into evidence, and (2) admitted evidence of A.C.'s religious beliefs to enhance her credibility, in violation of Rule 610 of the Utah Rules of Evidence. Defendant further argues that he was denied the effective assistance of counsel, citing defense counsel's failure to (1) object to the above errors; (2) object, on several grounds, to the testimony of Carolyn Henry, the State's expert witness; (3) request jury instructions on expert testimony; (4) raise specific objections to the State's impeachment of defense witnesses; and (5) request jury instructions on lesser included offenses. Finally, defendant argues that the State presented insufficient evidence of his intent to commit the offense.

## PLAIN ERROR

■ Although defense counsel did not object to the hearsay evidence at issue in this case, we may take "'notice of plain errors affecting substantial rights.'" *State v. Eldredge*, 773 P.2d 29, 35 (Utah 1989) (quoting Utah R. Evid. 103(d)). To establish plain error, defendant must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). "If any one of these requirements is not met, plain error is not established." *Id.* at 1209.

### I. Failure to Comply With Section 76–5–411

Defendant contends that the trial court committed plain error when it failed to enter findings and conclusions, as required by the Utah Code, supporting the reliability of A.C.'s hearsay statements admitted into evidence. Specifically, he challenges the trial court's admission of (1) Grandmother's testimony about A.C.'s statements given the day

---

1. Now known as the Division of Child and Family Services.

of the incident; (2) Pauline Hauer's testimony, which repeated A.C.'s responses given during the interview; and (3) a transcript of the videotape of A.C.'s interview,[2] as well as the videotape itself. Before discussing the merits of defendant's arguments, we will summarize the background underlying the admission of the evidence at issue.

Before trial, the prosecutor filed a notice of his intent to introduce hearsay evidence pursuant to Utah Code Ann. § 76–5–411 (1995), which provides that "a child victim's out-of-court statement regarding sexual abuse of that child is admissible as evidence although it does not qualify under an existing hearsay exception." The prosecutor expressed his intent to introduce the "transcript and/or video and/or audio tape record" of A.C.'s interview at the police station.

Section 76–5–411 requires the court to enter findings and conclusions "to explain its reasons for admitting . . . the testimony." *State v. Nelson,* 725 P.2d 1353, 1356 n. 3 (Utah 1986). At a pretrial hearing on the hearsay evidence, the court and the parties discussed the requirements of section 76–5–411. For various reasons, however, the parties agreed to postpone further action on the hearsay issue until later in the trial. The court never entered findings and conclusions supporting admission of the hearsay evidence.

■ In *State v. Cook,* 881 P.2d 913 (Utah Ct.App.1994), *cert. denied,* 890 P.2d 1034 (Utah 1995), this court held that "a trial court's failure to enter written findings and conclusions under section 76–5–411 is plain error." *Id.* at 916. In so concluding, this court distinguished *State v. Bullock,* 791 P.2d 155, 158–59 (Utah 1989), in which the Utah Supreme Court refused to consider whether the trial court had plainly erred by failing to comply with section 76–5–411. *See Cook,* 881 P.2d at 915 n. 3. In *Bullock,* the supreme court declined to consider the argument because the alleged error was "the result of a consciously chosen strategy of trial counsel."

*Bullock,* 791 P.2d at 158. In *Cook,* this court noted that, unlike in *Bullock,* the record did not reveal any evidence that the alleged error resulted from counsel's trial strategy. *See Cook,* 881 P.2d at 915 n. 3. We therefore will decline to consider a defendant's plainerror arguments if the alleged errors reasonably resulted from defense counsel's "conscious decision to refrain from objecting," or if defense counsel "led the trial court into error." *Bullock,* 791 P.2d at 158–59; *see also State v. Morgan,* 813 P.2d 1207, 1211 (Utah Ct.App.1991) (refusing to consider plain-error argument because "it was within counsel's professional discretion to not object to testimony that would aid [trial] strategy").

### A. Grandmother's Testimony

■ Defendant argues that the trial court plainly erred when it allowed Grandmother to testify about (1) A.C.'s nonverbal conduct, i.e., that A.C. appeared nervous and upset, and (2) A.C.'s statement that defendant had touched her under the panties on her "private parts." Defendant contends that, although not included in the prosecutor's notice, Grandmother's testimony was subject to the requirements of section 76–5–411.

A hearsay "statement" may include nonverbal conduct only if the declarant intends the conduct to be an "assertion." Utah R. Evid. 801(a)(2). In this case, defendant makes no attempt to show that A.C. intended her behavior to be an assertion. We therefore decline to address defendant's argument regarding A.C.'s nonverbal conduct. *See State v. Vigil,* 922 P.2d 15, 26 (Utah Ct.App. 1996) (declining to address argument "because defendant did not clearly analyze the issue").

■ Turning to A.C.'s verbal statement to Grandmother, we conclude that a "conceivable strategic purpose" supports the admission of this evidence. *See State v. Labrum,* 925 P.2d 937, 939 (Utah 1996). In his opening argument, defense counsel told the jury that he would "bring out some inconsisten-

---

**2.** The State has filed a motion to strike the first portion of defendant's reply brief, arguing that defendant has raised a new challenge against admission of the transcript. *See State v. Brown,* 853 P.2d 851, 854 n. 1 (Utah 1992). We con-

clude, however, that defendant's opening arguments were framed broadly enough to challenge the hearsay statements admitted through the transcript. We therefore deny the State's motion to strike.

cies, some questions, some things that don't quite make sense." In the interview at the police station, A.C. had said that her clothes were on when defendant touched her. On direct examination shortly before Grandmother's testimony, however, A.C. testified that defendant had pulled down her shorts and panties when the touching occurred. Therefore, defense counsel might reasonably have permitted the testimony to see which "version" A.C. had told Grandmother. During his closing argument, defense counsel reminded the jury about A.C.'s inconsistent recollections on this point. Because defense counsel's decision to permit the testimony "was reasonable in light of his trial strategy," we do not address defendant's plain-error arguments regarding Grandmother's testimony. *Morgan*, 813 P.2d at 1211.

## B. Pauline Hauer's Testimony [3]

■ Later in the trial, the State called Pauline Hauer, the DFS worker who conducted the interview of A.C. The prosecutor asked Ms. Hauer questions about the body inventory form that she had used during the interview. Ms. Hauer testified that the purpose of the form, which contained anatomically correct drawings of the body, was to evaluate A.C.'s ability to identify the names of certain body parts. She testified that, with one exception, A.C. was able to identify the parts of the body discussed during the interview.

We reject defendant's challenges to this testimony because, even assuming that A.C.'s naming of body parts constitutes a "statement regarding sexual abuse," Utah Code Ann. § 76–5–411(1) (1995), defense counsel's decision not to object was consistent with his trial strategy. *See Morgan*, 813 P.2d at 1211. Ms. Hauer's testimony enabled defense counsel to emphasize that A.C. had, without hesitation, identified the genital area as her "china." In closing argument, defense counsel revealed the exculpatory value of A.C.'s response: if A.C. had thought of her genital area as her "china," why had she reported that defendant touched her on the "private"? Defense counsel raised the possibility that "somebody else has suggested private. It's not a term that she used with familiarity." Therefore, because Ms. Hauer's testimony on direct examination supported defendant's theory of fabrication, "it was within counsel's professional discretion to not object to testimony that would aid this strategy." *Id.*

■ Next, on cross-examination of Ms. Hauer, defense counsel further inquired about A.C.'s identification of body parts on the form during the interview. Defense counsel then asked about A.C.'s responses to questions about "good touches" and "bad touches." The prosecutor objected, requesting that Ms. Hauer "be permitted to look at a transcript of the interview if [defense counsel is] going to ask her about precise wording." The trial court granted the prosecutor's request, and defense counsel asked Ms. Hauer to read a portion of the transcript that reflected A.C.'s knowledge of the difference between good touches and bad touches. Defendant later called Ms. Hauer as his first witness and, while exploring several topics on direct examination, asked Ms. Hauer to read most of the interview transcript to the jury.

By affirmatively placing most of A.C.'s interview responses into evidence, defense counsel was able to show the jury several inconsistencies in A.C.'s recollection of certain events. For example, Ms. Hauer's testimony revealed that, in the interview, A.C. said that the touching occurred after lunch, that she was awake and playing a game when defendant touched her, that defendant touched her only for a second on top of her clothing, and that he stopped touching her when she started kicking him. A.C. testified in court, however, that defendant had touched her before lunch, that she had been asleep and was awakened by the touching, that she was "stroked" under her clothing, and that defendant stopped touching her when she pretended to be waking up. In his

3. Although defendant separately challenges the admission of Pauline Hauer's testimony and the transcript of the videotape, we combine the arguments. The contents of the transcript were received only through Ms. Hauer's testimony. Moreover, the only hearsay statements repeated by Ms. Hauer were those given during the interview, as reflected on the transcript. Therefore, the two arguments challenge the same evidence.

closing argument, defense counsel emphasized these inconsistencies as evidence that A.C. had fabricated the allegations.

■ Although defense counsel needed to introduce the content of the transcript to establish the inconsistencies, "a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." *Dunn,* 850 P.2d at 1220. We therefore do not address defendant's argument that the trial court plainly erred in admitting portions of the transcript, through Ms. Hauer's testimony, without making reliability findings and conclusions under section 76–5–411. *See Bullock,* 791 P.2d at 158 ("[I]f a party through counsel . . . has led the trial court into error, we will then decline to save that party from the error.").

### C. Videotape of the Interview

Throughout defense counsel's direct examination of Ms. Hauer, the prosecutor objected, arguing that the jury should be allowed to watch the videotape of the interview. Although the court initially overruled the objections, it later permitted the jury to see the videotape at the close of defendant's case. Defense counsel agreed with the court's action, stating that "I have no objection to the jury seeing the video if they want to see the entire context." Because defense counsel affirmatively waived the objection, we decline to consider defendant's argument. *See Bullock,* 791 P.2d at 158.

### II. Testimony Regarding Religious Beliefs

■ On direct examination of A.C., the prosecutor asked questions designed to explore A.C.'s understanding of the difference between truth and falsehood. Later, the prosecutor asked A.C., "What would happen . . . if you told grandma a lie?" A.C. replied, "I would get in trouble." The prosecutor then asked, "Would you like that or would you dislike that?" A.C. replied that she would "dislike that." The following exchange then occurred:

Q [A.C.], do you ever say your prayers?

A Yes.

Q Do you know who you pray to?

A Yes.

Q Who do you pray to?

A Heavenly Father.

Q Do you know where he lives?

A Yes.

Q Can you show us where he lives? Do you know?

A Yes.

Q Is it in heaven?

A Yes.

Q Now, do you want to make Heavenly Father happy?

A Yes.

Q Do you think if here today with your friends and the people you have just met today, do you think that Jesus and Heavenly Father would be happy or sad if you tell a lie?

A Sad.

Q And you wouldn't want Jesus to be sad, would you?

A No.

Q [A.C.], will you promise to me and to the judge and all of our friends here today that everything you tell us today here in court will be the truth?

A Yes.

Q Do you promise you won't tell ·us any lies?

A I promise.

Defendant argues that the prosecutor asked A.C. about her religious beliefs to enhance her credibility, in violation of Rule 610 of the Utah Rules of Evidence. That rule provides, "Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness'[s] credibility is impaired or enhanced." Utah R. Evid. 610. Defendant argues that admission of the evidence was plain error. *See Eldredge,* 773 P.2d at 35–36.

The State responds that the prosecutor did not intend to enhance A.C.'s credibility, but merely to establish her competency to testify truthfully. Defendant points out, however, that A.C. was competent to testify without prior qualification. *See* Utah Code Ann. § 76–5–410 (1995) ("A child victim of sexual abuse under the age of ten is a competent

witness and shall be allowed to testify without prior qualification in any judicial proceeding.").

■ We conclude that, to the extent that the prosecutor improperly intended to enhance A.C.'s credibility, it was error to allow the testimony. Under the circumstances of this case, however, that error would not have been "obvious" to the trial court. *See Eldredge,* 773 P.2d at 35 (stating that, to constitute plain error, reviewing court "must be able to say that it should have been obvious to a trial court that it was committing error"). Although section 76–5–410 abolishes the need to establish competency of certain victims of child sexual abuse, the trial court still retains discretion to exclude the child's testimony for other reasons. *See State v. Fulton,* 742 P.2d 1208, 1218 (Utah 1987) (stating that trial court may exclude testimony of child witness under Rule 403); *see also State v. James,* 211 Conn. 555, 560 A.2d 426, 432 (1989) (concluding that, although state statute declares competence of child sexual assault victims, "courts have authority to exclude evidence that may be more prejudicial than probative").

■ In addition, even after competency has been established, "counsel may harbor doubts about the jury's confidence in the child's testimonial capacity." John E.B. Myers, *The Child Witness: Techniques for Direct Examination, Cross–Examination, and Impeachment,* 18 Pac. L.J. 801, 806 (1987). In those circumstances, counsel may "utilize a portion of the direct examination to ask questions designed to demonstrate the child's competence." *Id.* One factor bearing on competency is the child's " 'sense of moral duty to tell the truth.' " *State v. Wilkerson,* 612 P.2d 362, 364 (Utah 1980) (citation omitted) (discussing factors for competency determination under previous child-competency statute). Evidence of religious beliefs has been used in competency determinations to establish a child witness's moral duty to tell the truth. *See id.* at 365 (recognizing child's statement that she knew "it was wrong to tell a lie," having learned about it in church); *see also Barrett v. State,* 23 Ark.App. 144, 744 S.W.2d 741, 744 (1988) (approving competency determination in which child witness testi-

fied that he understood "that God would punish him if he told a lie"); *Jordan v. State,* 172 Ga.App. 96, 322 S.E.2d 106, 107 (1984) (upholding finding of competency of eight-year-old who testified that she believed in God and knew that she might be punished for lying).

Here, both the trial court and the prosecutor were concerned about A.C.'s ability to identify truth and falsehood and her sense of moral duty to tell the truth. In a pretrial conference, the court quickly agreed with the prosecutor's stated intent to "do my best to lay a foundation for competency," and to explore A.C.'s ability to distinguish between truth and lies. The court responded, "There wasn't a lot of that in the video about if she knew what would happen, what telling a lie is...." In light of that pretrial discussion, the trial court had expected the prosecutor to explore both A.C.'s ability to identify the truth and her sense of moral duty to testify truthfully. Therefore, under the circumstances of this case, to the extent that the prosecutor's examination improperly touched on credibility, we cannot say that the error should have been obvious to the trial court. *Cf. James,* 560 A.2d at 432 (noting that "competency is closely related to credibility").

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ Next, defendant contends that he was denied the effective assistance of counsel. To establish ineffective assistance, defendant must show that defense counsel's "representation fell below an objective standard of reasonableness," and that, but for the deficient representation, there is a "reasonable probability" that the result would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

### I. Failure to Demand Compliance with Section 76–5–411 and to Object under Rule 610

■ In evaluating defense counsel's strategy under an ineffective-assistance anal-

ysis, "we give trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis supporting them." *State v. Crosby,* 927 P.2d 638, 644 (Utah 1996). As noted above, the testimony of Grandmother and Pauline Hauer allowed defense counsel to show A.C.'s inconsistent recollections of the alleged abuse. Furthermore, the jury heard nothing of consequence on the videotape of the interview that had not already been revealed through Ms. Hauer's reading of A.C.'s hearsay statements from the transcript. Therefore, because a "reasonable basis" supports defense counsel's decision to allow A.C.'s hearsay statements into evidence without entry of findings and conclusions under 76-5-411, we cannot say that defense counsel's performance was objectively deficient. *See id.*

■ Turning to defendant's arguments regarding Rule 610, we note that if an error was not obvious to the trial court, it most likely was not obvious to trial counsel. *See State v. Saunders,* 893 P.2d 584, 592 (Utah. Ct.App.), *cert. granted,* 910 P.2d 425 (Utah 1995). "It follows that the failure of counsel to object to an alleged error that is not readily apparent cannot constitute an *objectively* deficient performance." *Id.* Therefore, having previously concluded that any error under Rule 610 was not obvious to the trial court, "we can only conclude that counsel's failure to interpose objections did not constitute the ineffective assistance of counsel." *Id.*

## II. Failure to Object to Testimony of Carolyn Henry

### A. Opinion on Truthfulness

■ Defendant contends that defense counsel rendered deficient performance by failing to object, under Rule 608 of the Utah Rules of Evidence, to certain testimony of Carolyn Henry, the State's expert witness. In particular, defendant argues that Ms. Henry testified about the truthfulness of A.C.'s allegations of sexual abuse, in violation of Rule 608(a)(1) of the Utah Rules of Evidence, which "permits testimony concerning a witness's general character or reputation for truthfulness ... but prohibits any testi-

mony as to a witness's truthfulness on a particular occasion." *State v. Rimmasch,* 775 P.2d 388, 391 (Utah 1989). The *Rimmasch* court stated that expert testimony amounting to a "direct opinion on the truthfulness" of a witness is impermissible under Rule 608(a). *Id.* at 393.

Here, Ms. Henry testified generally about a seven-year-old child's sense of time, understanding of causation, and common reactions to sexual abuse. In particular, defendant points to the following as an example of Ms. Henry's testimony on A.C.'s truthfulness:

Q Do you have any understanding ... whether this pattern of reporting, that is, maybe telling a slightly different version of events by the child victim[,] is indicative of fabrication ... ?

A No....

Q You would agree with us adults who think we are adults, if we report something inconsistently, that tends to indicate fabrication?

A Yes.

Q But that's not true with a child?

A Especially not in sexual abuse cases....

In *State v. Blackstead,* 126 Idaho 14, 878 P.2d 188 (1994), the court held admissible the expert's testimony that explained why a victim of sexual abuse might delay reporting the incident. *See id.* 878 P.2d at 195. The court emphasized that the expert never commented on the child's veracity, but merely offered "specialized knowledge" that the jury could properly use to evaluate the *credibility* of the child victim. *Id.* at 196.

Also, in *Stout v. State,* 612 N.E.2d 1076 (Ind.Ct.App.1993), the court upheld the admission of expert testimony that explained why a victim of sexual abuse would report the details of the incident in "bits and pieces." *Id.* at 1079-80. The court noted that the witness never "state[d] her belief that the victim was telling the truth" and that the testimony only showed "the victim's purported memory loss to be a credible explanation for the revelation of details not previously disclosed." *Id.* at 1080.

Similarly, Ms. Henry's testimony aided the jury in understanding the mental processes and behaviors of a seven-year-old child. Like the expert witness in *Blackstead,* Ms. Henry offered "specialized knowledge" to aid the jury's evaluation of certain behaviors of seven-year-old children, without giving a direct opinion on whether A.C. was telling the truth. *See* 878 P.2d at 196. In addition, Ms. Henry's testimony explained why a child victim of sexual abuse might report inconsistent details, thus offering a possible explanation of A.C.'s inconsistency in reporting the abuse. *See Stout,* 612 N.E.2d at 1080. Therefore, because Ms. Henry's testimony did not "amount to giving a direct opinion on the truthfulness" of A.C.'s allegations of abuse, *Rimmasch,* 775 P.2d at 393, defense counsel did not render deficient performance by failing to object to the testimony.

### B. Hypothetical Questions Based on Facts Not in Evidence

■■■ Defendant argues that defense counsel should have objected to certain hypothetical questions that were based on facts not admitted into evidence. *See Ashton v. Ashton,* 733 P.2d 147, 153 (Utah 1987) ("Hypothetical questions must be based upon facts in evidence."). First, defendant contends that the prosecutor's questions to Ms. Henry about a seven-year-old's concept of time were improper because no evidence had been admitted to show that A.C. had reported the time of the abuse inconsistently.

A.C. testified that the abuse occurred before lunch. In the interview, however, she had reported that the abuse occurred after lunch. Although this particular inconsistency had not been offered into evidence when the hypothetical question was asked, A.C.'s testimony had revealed her general difficulty with concepts of time. The trial court recognized A.C.'s limitations on this point, stating that "this child has no particular correlation to the exact time of day or sequence of events." Because the hypothetical questions exploring a child's concept of time were supported by the evidence, defense counsel was not required to object to the questions.

■■■ Finally, defendant argues that the prosecutor improperly asked Ms. Henry if children commonly report that harmful touching occurs under the clothes or over the clothes. Defendant correctly points out that A.C.'s inconsistent statement that defendant touched her over the clothing was not in evidence when the question was asked. We note, however, that even if defense counsel should have objected to the question, Ms. Henry's testimony regarding that topic was not so significant that our confidence in the outcome of the case is undermined. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Ms. Henry's testimony did not affect the several other inconsistent statements that defense counsel could use as evidence of fabrication. Therefore, absent the alleged deficient performance, there is no reasonable probability that defendant would have obtained a more favorable result. *See id.*

### C. Relevance and Danger of Unfair Prejudice and Confusion of Issues

Defendant next argues that defense counsel should have objected to Ms. Henry's testimony under Rules 401 through 403 and Rule 702 of the Utah Rules of Evidence. He contends that Ms. Henry's testimony was irrelevant and, therefore, inadmissible. Alternatively, he argues that, even if relevant, Ms. Henry's testimony should have been excluded because of its potential for unfair prejudice and confusion of the issues.

■■■ Ms. Henry answered hypothetical questions, based on facts in evidence, about the mental abilities and behaviors of seven-year-old children. *See, e.g., Commonwealth v. Waite,* 422 Mass. 792, 665 N.E.2d 982, 990 (1996) (stating that expert testimony may properly be based on facts in evidence introduced through hypothetical questions); *Price v. Commonwealth,* 18 Va.App. 760, 446 S.E.2d 642, 645 (1994) (same). Because Ms. Henry's testimony provided useful information for the jury to understand a seven-year-old child's behavior and to evaluate how a child might respond to sexual abuse, the testimony had the tendency to prove the allegations at issue in this case. *See* Utah R. Evid. 401. The testimony was relevant and, therefore, admissible. *See* Utah R. Evid. 401, 402. Similarly, because Ms. Henry of-

fered "specialized knowledge" that helped the jury "to understand the evidence or to determine a fact in issue," her testimony was admissible under Rule 702. Utah R. Evid. 702; *see Duckett v. State,* 797 S.W.2d 906, 920 (Tex.Crim.App.1990) (en banc) (holding expert testimony admissible under Rule 702 because it gave the jury specialized information about "why a child who has been abused will act in a certain manner which to the layman may appear unreasonable or inconsistent with a claim of abuse"), *overruled on other grounds by Cohn v. State,* 849 S.W.2d 817 (Tex.Crim.App.1993).

We reject defendant's Rule 403 arguments because he makes no effort to show that the probative value of the testimony was *substantially* outweighed by the danger of unfair prejudice or confusion of the issues. *See* Utah R. Evid. 403. Therefore, because Ms. Henry's testimony was properly admitted under Rules 401 through 403 and Rule 702 of the Utah Rules of Evidence, defense counsel's failure to object under these rules did not fall "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064.

### III. Failure to Request Jury Instructions on Expert Testimony

■ Defendant argues that defense counsel should have requested jury instructions designed to limit the jury's reliance on circumstantial evidence, specifically Ms. Henry's testimony. Defendant cites *State v. Kallin,* 877 P.2d 138 (Utah 1994), as the source of defense counsel's duty to request this particular instruction at trial. *See id.* at 141 (stating that expert testimony describing relationship between "certain behavioral symptoms" and sexual abuse, *"subject to appropriate limitations and instructions to the jury,"* may assist the jury in giving proper weight to the evidence (emphasis added)).

Assuming, but not deciding, that defense counsel's performance fell below an objective standard, we "consider the totality of the evidence" before the jury to determine the prejudicial effect of the deficient representation. *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2069. On cross-examination, Ms. Henry

conceded that children may respond to abuse in diverse ways:

Q So you are telling me that your testimony you've just given to [the prosecutor's] questions are generalizations, they don't apply in every case?

A No. Some of it has factual—some of it has statistical backup for it, but I would qualify it with, just depends on the child.

Q So one child may act differently than another?

A Very common for me to have three children from the same family, all abused by the same perpetrator, who have a different outward response to the abuse.

We conclude that Ms. Henry's qualification sufficiently cautioned the jury that her testimony was not necessarily an accurate description of A.C.'s behavior or how A.C. may have reacted to the alleged abuse. The qualifying responses allowed "the jury to assess the probative relevance of [her testimony] in light of all other evidence." *Kallin,* 877 P.2d at 141. Therefore, the alleged error does not undermine our confidence in the outcome of this case. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

### IV. Failure to Object to Impeachment of Defense Witnesses

#### A. Impeachment of Defendant

■ On cross-examination of defendant, the prosecutor established that defendant had procured a Utah driver's license and identification card under a false name. Although defendant concedes that the prosecutor's impeachment was proper under Rule 608(b)(1) of the Utah Rules of Evidence, he contends that defense counsel should have sought to exclude the impeachment evidence under Rule 403.

■ Courts have considered several factors in determining whether to exclude, under Rule 403, impeachment evidence otherwise admissible under Rule 608(b): remoteness of the evidence, importance of credibility, probative value of the evidence, likelihood that the prior misconduct actually occurred, and whether the evidence is inflammatory. *See* 28 Charles Alan Wright & Victor James Gold, *Federal Practice*

*and Procedure* § 6118, at 94–100 (1993). Here, the driver's license and identification card reflected defendant's address in Vernal, where he moved in 1991, about five years before the trial in this case. Therefore, even if defendant had obtained the documents soon after moving to Vernal, the misconduct was not remote. *See United States v. Jackson*, 882 F.2d 1444, 1447–48 (9th Cir.1989) (concluding that misconduct occurring fourteen years before trial was not remote). The lack of corroborating evidence in this case made the credibility of A.C. and defendant very important. *Cf. United States v. Watson*, 669 F.2d 1374, 1383 (11th Cir.1982) (concluding that trial court erred in excluding impeachment of witness whose testimony was "the lynchpin to the government's case"). Defendant's use of a false name is highly probative of untruthfulness. *See United States v. Ojeda*, 23 F.3d 1473, 1477 (8th Cir.1994) ("If a man would lie about his name, a jury may reasonably infer that he would lie about other matters, even on the witness stand."). Because defendant admitted using the false name, there was no question whether the prior misconduct occurred in this case. *Cf. United States v. Townsend*, 31 F.3d 262, 269 (5th Cir.1994) (upholding exclusion of impeachment evidence for lack of evidence that prior misconduct occurred). Finally, that defendant procured a driver's license and identification card under a false name is not the type of evidence that is likely to inflame the jury. *See State v. Larsen*, 876 P.2d 391, 395 (Utah.Ct.App.1994).

Therefore, the probative value of the impeachment evidence was not substantially outweighed by its potential for unfair prejudice or confusion of the issues. *See* Utah R. Evid. 403. Defendant suggests, without argument, however, that the Utah Code also provides a basis for excluding the evidence. *See* Utah Code Ann. § 78–24–9 (1996) (providing that a witness need not "give an answer which will have a direct tendency to degrade his character"). We decline to address the issue because it has not been adequately briefed. *See State v. Vigil*, 922 P.2d 15, 26 (Utah Ct.App.1996). We therefore conclude that defense counsel did not render

objectively deficient performance by failing to object to the prosecutor's impeachment of defendant.

### B. Impeachment of Robert Garrett

The prosecutor sought to impeach Robert Garrett, one of defendant's witnesses, by showing his potential bias against the prosecutor. The jury learned that the prosecutor had previously charged Mr. Garrett with several crimes and that Mr. Garrett spent several weeks in jail because the prosecutor had refused to agree to lower his bail. Defense counsel objected to the impeachment, arguing that it was "clearly improper."

■ Defendant now contends that defense counsel should have objected specifically on the ground that misconduct not resulting in a conviction is inadmissible to impeach a witness. Defendant's argument, however, ignores Rule 608 of the Utah Rules of Evidence: "Bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced." Utah R. Evid. 608(c); *see Harrison v. State*, 259 Ga. 486, 384 S.E.2d 643, 646 (1989) (holding that prosecutor properly impeached defense witness for bias by showing "criminal charges surrounding his incarceration"). Because the evidence was admissible to show Mr. Garrett's potential bias against the prosecutor, defense counsel's performance did not fall below an objectively reasonable standard.

### V. Failure to Request Jury Instructions on Lesser Included Offenses

■ Defendant argues that defense counsel should have requested jury instructions on certain lesser included offenses. Defense counsel's failure to request the instructions, however, is entirely consistent with his trial strategy. Defense counsel argued throughout trial that A.C. was lying about the alleged abuse, and suggested that A.C.'s mother had devised the allegations. Thus, defense counsel's request for instructions on lesser included offenses would have been inconsistent with his assertion that defendant never touched A.C. *See State v. Perry*, 899 P.2d 1232, 1241 (Utah Ct.App.1995)

(concluding that defendant received effective assistance because jury instruction on lesser crime "would have been wholly 'incompatible'" with trial strategy, which focused on defense of "misidentification"). We therefore conclude that defense counsel did not render objectively deficient performance by failing to request instructions on lesser included offenses. *See Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064.

## INSUFFICIENCY OF EVIDENCE

■ Finally, defendant argues that the State presented insufficient evidence to establish the element of intent for conviction of aggravated sexual abuse of a child. *See* Utah Code Ann. § 76–5–404.1(1) (1995) (requiring "intent to cause substantial emotional or bodily pain to any person or ... the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant"). We emphasize that, "'[s]o long as there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime can reasonably be made, our inquiry stops.'" *State v. Lactod*, 761 P.2d 23, 27 (Utah Ct.App.1988) (citation omitted). The evidence, viewed in the light most favorable to the jury's verdict, established that defendant pulled down A.C.'s shorts and panties and stroked her on the genital area. From this evidence, the jury could properly draw the inference that defendant had the intent to arouse or gratify his own sexual desire. *See State v. Cooley*, 603 P.2d 800, 802 (Utah 1979) (stating that, if the prosecutor were required to "'prove directly what was in the defendant's mind,'" the defendant could "'defeat practically any conviction'" (citation omitted)). Although defendant argues that he denied touching A.C., "the jury simply chose to believe" A.C. rather than defendant. *State v. Pedersen*, 802 P.2d 1328, 1330 (Utah Ct.App.1990), *cert. denied*, 815 P.2d 241 (Utah 1991). Therefore, we cannot say that "'reasonable minds must have entertained a reasonable doubt'" that defendant had the intent required under section 76–5–404.1. *Lactod*, 761 P.2d at 27 (citation omitted).

## CONCLUSION

In light of defendant's strategical use of A.C.'s hearsay statements, we refuse to consider his argument that the trial court plainly erred by failing to comply with section 76–5–411 of the Utah Code. Furthermore, under the circumstances of this case, the error under Rule 610 of the Utah Rules of Evidence was not obvious to the trial court. Defendant was not denied the effective assistance of counsel because either defense counsel's performance did not fall below an objective standard or, even assuming deficient performance, there is no reasonable probability that defendant would have obtained a more favorable result. Finally, sufficient evidence supports the jury's finding that defendant had the necessary intent to commit the offense.

We therefore affirm defendant's conviction.

DAVIS, P.J., and WILKINS, Associate P.J., concur.