**2015 UT App 247**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF V.L.V.-G.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

V.L.V.-G.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Memorandum Decision
No. 20140218-CA
Filed October 1, 2015

Fourth District Juvenile Court, Provo Department
The Honorable Brent H. Bartholomew
No. 174714

Margaret P. Lindsay and Douglas J. Thompson,
Attorneys for Appellant

Sean D. Reyes, Lindsey L. Wheeler, and Laura B.
Dupaix, Attorneys for Appellee

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGES GREGORY K. ORME and JOHN A. PEARCE concurred.

TOOMEY, Judge:

¶1     V.L.V.-G. (L.G.), a minor, challenges the juvenile court's
adjudication order, finding him guilty of four counts of graffiti—
offenses that would be two third-degree felonies and two class A
misdemeanors if committed by an adult. He does not deny spray
painting the graffiti, but argues the juvenile court erred in
adjudicating him guilty of enhanced graffiti allegations "because
the only evidence related to the monetary value of the damages
came in the form of inadmissible evidence." He also argues his

counsel was ineffective for failing to object on this basis. He asks this court to reverse the juvenile court's order and remand for a new trial or, in the alternative, for the juvenile court to reduce each count to a class B misdemeanor. We affirm.

¶2     In 2013, two Provo City police officers noticed that someone had spray painted graffiti on objects throughout the city, including traffic barricades, traffic signs, community mailboxes, and a door at the Utah Convention Center. L.G. was later charged with four counts of graffiti—three third degree felony counts (damages exceeded $1,000) and one class A misdemeanor count (damages were between $300 and $1,000).[1] *See* Utah Code Ann. § 76-6-107(2)(b), (c) (LexisNexis 2012).

¶3     At the bench trial, only the two police officers and L.G. testified concerning the graffiti.[2] Officer Daniel Smith testified that he recognized the graffiti—variations of the word "Krag"— as the same tag[3] L.G. had previously "admitted to doing." He testified that when he questioned L.G., L.G. initially denied painting the graffiti, but after telling L.G. that he recognized the tag as the "same exact ones that [L.G.] admitted to" before, L.G. became upset and "nodded his head up and down in a yes fashion."

---

1. L.G. was also charged and convicted of at least one other unrelated charge, but the other charges are not relevant to our analysis and are not at issue here.

2. A court clerk was also sworn in for the limited purpose of introducing documents into the record.

3. A "tag" is "a graffito in the form of an identifying name or symbol." *Merriam-Webster Dictionary*, http://www.merriam-webster.com/dictionary/tag (last visited Sept. 14, 2015). "Tagging" is the act of making the graffito—"to provide or mark with or as if with a tag." *Id.*

¶4    Officer Smith also testified that in investigating the graffiti, he photographed and documented the damage, then telephoned the victims to inform them that their property had been damaged. Based on their experiences in remedying graffiti damage, without personally seeing the graffiti, the victims gave Officer Smith an estimated amount for the costs of clean-up or replacement of the damaged items. For the damages to thirty-six barricades, Officer Smith testified that Barricade Services told him the damages were approximately "$750.00 . . . for the large traffic cones and $930.00 in damages for the smaller ones." He testified that Provo City estimated damage to ten traffic signs was "valued at $1,500.00" and that the United States Postal Service valued the damages to three mailboxes at $500.00 each.[4]

¶5    Although L.G. admitted that he had previously been charged and found guilty of tagging "Krag," L.G. denied ever tagging it, instead suggesting someone else did. In closing arguments, L.G.'s trial counsel reiterated that L.G. did not commit the offense and that someone else was responsible for the graffiti.

¶6    The juvenile court found "beyond a reasonable doubt" that the evidence demonstrated L.G. painted the graffiti, and the judge stated, "I found the Officers' testimony to be credible. They were corroborating. There's no reason for them to misstate what they had said. There was documentation of what they were saying." The court adjudicated L.G. guilty on all counts but reduced one third degree felony charge to a class A

---

4. The value of the damage to the convention center's door is unclear from the record. Both times the officer was asked about the door, the prosecutor and trial counsel either interrupted him or moved on without asking about the amount.

misdemeanor based on Officer Smith's estimated damages testimony.[5] L.G. appeals.

¶7 To adjudicate L.G. guilty of graffiti, the State had to prove that he was responsible for the graffiti and then, to establish the level of the offense, the State had to prove an approximate value of the damage.[6] *See, e.g.*, Utah Code Ann. § 76-6-107(2)(b) (LexisNexis 2012) (providing that graffiti is a third degree felony if the damages exceed $1,000); *id.* § 76-6-107(2)(c) (providing that graffiti is a class A misdemeanor if the damages are between $300 to $1,000). Here, to establish the estimated damages caused by the graffiti the State relied on Officer Smith's testimony regarding his conversations with the victims. For purposes of our analysis, we assume, without deciding, Officer Smith's testimony regarding the amount of damages was inadmissible hearsay. *See* Utah R. Evid. 801(c), 802.

¶8 L.G. asserts trial counsel violated his constitutional right to effective assistance and deprived him of his right to confrontation by not objecting to Officer Smith's hearsay testimony.[7] Specifically, L.G. argues trial counsel had no

---

5. L.G. was ordered to complete community service and to pay restitution. He was also placed in the temporary custody of the Division of Juvenile Justice Services to be placed in detention for up to thirty days before being placed with a juvenile work camp to help work off service hours and restitution.

6. The precise amount of removal costs, repair costs, or replacement costs is relevant only upon conviction or adjudication when the court must order restitution to the victims in the amount of such costs. *See* Utah Code Ann. § 76-6-107(4) (LexisNexis 2012).

7. To the extent L.G. argues his Sixth Amendment right "to be confronted with the witnesses against him" was violated, *see* U.S.

(continued…)

reasonable basis for not objecting to the officer's testimony and had not properly "investigated the law [or] the facts related to [the] victim witnesses." He suggests that trial counsel was simply unprepared and "missed the opportunity to exclude the evidence altogether." L.G. also argues the court plainly erred by admitting the hearsay testimony into evidence.[8]

¶9 To demonstrate that trial counsel provided constitutionally ineffective assistance, L.G. must show "both 'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *Layton City v. Carr*, 2014 UT App 227, ¶ 12, 336 P.3d 587 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether [the] defendant was deprived of the effective assistance of counsel as

---

(…continued)

Const. amend VI, L.G. cannot establish his ineffective-assistance-of-counsel and plain-error claims if there was a conceivable strategy for L.G.'s trial counsel not objecting to Officer Smith's hearsay testimony. *See infra* ¶¶ 14–17.

8. In his appellate briefs, L.G. often frames this as a challenge to the sufficiency of the evidence. But based on the substance of his analysis, we read this argument as a challenge to the evidence based on its admissibility. In essence, L.G. argues that because Officer Smith's testimony was inadmissible hearsay evidence, the court could not consider it in adjudicating him and, therefore, without the officer's testimony regarding damages, there was insufficient evidence. But as discussed below, because we conclude that the court was not required to second-guess the admissibility of Officer Smith's testimony, the court properly considered it. *See infra* ¶¶ 16–17.

a matter of law." *Id.* ¶ 6 (alteration in original) (citation and internal quotation marks omitted).

¶10    L.G. first argues "counsel's performance was deficient because he failed to object to evidence in violation of the rules prohibiting hearsay and L.G.'s right to confront the witnesses against him." We disagree. To demonstrate that his counsel's representation was deficient, he must overcome the strong presumption that "under the circumstances, the challenged action might be considered sound trial strategy" including the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted). "Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In other words, counsel's performance will not be deemed deficient unless L.G. can "'show that counsel's representation fell below an objective standard of reasonableness.'" *Carr*, 2014 UT App 227, ¶ 12 (quoting *Strickland*, 466 U.S. at 688).

¶11    Reconstructing the circumstances as *Strickland* requires, it is apparent from the record that trial counsel's primary strategy was to attack the quality of the State's evidence in an effort to convince the court that L.G. was not responsible for the graffiti. Counsel theorized that some other person did it and suggested that, without a witness, no convincing evidence proves L.G. was responsible for it. Counsel presented L.G.'s own denial testimony to support the theory that someone else made the graffiti. But he also challenged the sufficiency of the evidence by indicating that Officer Smith never heard L.G. admit to tagging "Krag." Instead, as counsel pointed out, that the officer only heard L.G. admitted to the previous "Krag" tags through

"hearsay from someone else" and that L.G.'s admission in this case was based primarily on a head nod.

¶12    Counsel also attacked the quality of Officer Smith's testimony regarding the amount of damages by cross-examining him with a series of questions to help demonstrate that his testimony was flawed. In response to counsel's questioning, Officer Smith admitted that none of the victims actually saw the damage before giving him an estimated cost for clean-up or for replacement. The officer also admitted that he did not know whether the victims' reported amounts were the costs of replacement or clean-up. Based on Officer Smith's testimony, counsel suggested that the estimated damage amounts "don't really mean anything" regarding restitution.

¶13    L.G. contends that there is "no reasonable basis to support trial counsel's failure to object [to the hearsay testimony] as a sound trial strategy." He argues there was "no risk that bringing the unconstitutional nature of the statements to the attention of the judge would have a negative effect upon his judgment." Rather, L.G. asserts, counsel simply "did not prepare and his failure to object demonstrated that lack of preparation." We are not persuaded.

¶14    Evaluating the conduct from counsel's perspective, the decision not to seek to exclude Officer Smith's hearsay testimony appears to be a sound trial strategy. First, if counsel had directly attacked the amount of the damage he risked forcing the State to call the victims to testify to the precise amount of damage—which could have been much more than the estimates. The estimated damage amounts, as counsel suggested, do not "really mean anything as far as restitution," but are used to demonstrate the level of offense. Consequently, had counsel objected to Officer Smith's testimony concerning the damage amounts and had the victims testified to higher amounts, L.G. could have been held responsible for more serious offenses.

¶15    Second, in line with this defense strategy, counsel might well have thought the more effective way of undermining the evidence was to challenge the validity of Officer Smith's statement by portraying him as someone who was unreliable. There was little chance of keeping evidence of the amount of damage out of trial, and challenging Officer Smith's testimony regarding the amount of damage would likely be more feasible than refuting the victims' statements. Moreover, the victims' evidence supporting the amount of damages, including receipts and other invoices, would expectedly prove more difficult to challenge than Officer Smith's less reliable recollection of his out-of-court conversations.

¶16    Accordingly, we conclude that the decision not to seek exclusion of Officer Smith's damages testimony may well have been part of a sound trial strategy and thus did not fall below an objective standard of reasonableness. With the benefit of hindsight, the availability of other defense strategies may be clear, but "[w]henever there is a legitimate exercise of professional judgment in the choice of trial strategy, the fact that it did not produce the expected result does not constitute ineffectiveness of counsel." *State v. Bullock*, 791 P.2d 155, 160 (Utah 1989).

¶17    Because trial counsel's failure to object to Officer Smith's damages testimony did not amount to ineffective assistance of counsel and was the result of a conscious strategy to attack the quality of the State's evidence, we do not address L.G.'s plain-error argument. Courts are "not required to constantly survey or second-guess [a] nonobjecting party's best interests or trial strategy." *See State v. Bedell*, 2014 UT 1, ¶ 26, 322 P.3d 697 (alteration in original) (citation and internal quotation marks omitted); *see id.* (providing that only where an error serves "no conceivable strategic purpose" should courts intervene in counsel's trial strategy (citation and internal quotation marks omitted)). By not objecting to Officer Smith's damages

testimony, "the trial judge [was] put in the untenable position of deciding whether to intervene and potentially interfere with trial counsel's strategy or face review for plain error." *State v. Morgan*, 813 P.2d 1207, 1211 (Utah Ct. App. 1991) (citation and internal quotation marks omitted). Furthermore, allowing L.G. to now claim that Officer Smith's damages testimony should not have been admitted "would permit him to present one strategy, lose, and then start over with a whole new strategy." *Id.* (citation and internal quotation omitted). As the Utah Supreme Court has explained,

> If trial counsel were permitted to forego objecting to evidence as part of a trial strategy that counsel thinks will enhance the defendant's chances of acquittal and then, if that strategy fails, were permitted to claim on appeal that the [reviewing court] should reverse because it was plain error for the court to admit the evidence, we would be sanctioning a procedure that fosters invited error. Defendants are thus not entitled to both the benefit of not objecting at trial and the benefit of objecting on appeal.

*Bullock*, 791 P.2d at 159 (footnotes omitted); *see also State v. Hall*, 946 P.2d 712, 716 (Utah Ct. App. 1997) (declining to consider an appellant's plain-error arguments when "the alleged errors reasonably resulted from defense counsel's 'conscious decision to refrain from objecting'" (quoting *Bullock*, 791 P.2d at 158–59)); *Morgan*, 813 P.2d at 1211 (same). Accordingly, if we were to conduct a plain-error review of the court's decision not to intervene in counsel's trial strategy, we "would be sanctioning a procedure that fosters invited error." *See Bullock*, 791 P.2d at 159.

¶18    In sum, when viewed in light of the presumption of competence, we conclude counsel's decision not to object to Officer Smith's testimony concerning damages was based on a

conscious strategy to attack the quality of the State's evidence and thus did not fall "outside the wide range of professionally competent assistance." *See Strickland v. Washington*, 466 U.S. 668, 690 (1984). Because L.G. has not demonstrated that counsel's performance was deficient, we need not address his argument that counsel's representation prejudiced his defense. Moreover, because counsel did not seek to exclude Officer Smith's hearsay testimony as part of his trial strategy, we decline to resolve L.G.'s plain-error claims. We therefore affirm.

————————